JAMES GREEN, PETITIONER-RESPONDENT, v. FRANK DeFURIA AND JOHN BENEDETTO, T/A BLACK AND WHITE GARAGE, DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued March 7, 1955—Decided March 16, 1955.

Goldmann, S. J. A. D., dissented.

Before Judges GOLDMANN, FREUND and CONFORD.

Mr. *Henry F. Hoey, Jr.*, argued the cause for defendants-appellants (*Mr. William P. Braun*, attorney).

Mr. *Herman M. Wilson* argued the cause for petitioner-respondent (*Mr. Harvey A. Lieb*, attorney).

The opinion of the court was delivered by

CONFORD, J. A. D.   Here the Workmen's Compensation Division held that the injury petitioner sustained did not arise out of and in the course of his employment by the appellants and denied compensation.   The County Court reversed.   Hence this appeal.

Petitioner was employed by defendants as a night gasoline station attendant, selling gasoline and oil and answering the telephone for tow calls.   He had worked for the defendants for six months prior to the accident.   On June 11, 1953, while on duty, he had the company of a man known to him only as "Frankie" who occasionally visited with petitioner while he was working.   Between 1 A. M. and 2 A. M. the horn of an automobile parked and unattended at a closed gas station across the street from where the petitioner was employed began sounding and continued for five or ten minutes before he went over and disengaged the wire of the car to stop the noise.   After doing this petitioner stepped back and fell into a grease pit, sustaining the injuries for which he sought compensation in the Division.

Plaintiff testified that the noise irritated him and annoyed the neighbors who were calling out to him to eliminate it. He also testified that after the noise began the telephone in his station rang and he could not understand what was being said because of the noise and the fact that the station door was open and near the phone.   He said that it was for these reasons that he went on his ill-fated venture across the street.

On cross-examination, petitioner was asked whether one of his employers, Mr. Benedetto, had not told him prior to the date of the accident never to leave the gas station. Petitioner's response was: "He spoke to me time and again never to leave the gas station alone."   The most recent such

direction was the night before the accident. In relation to this subject, Mr. Benedetto testified that his instructions to petitioner were:

"* * * never to leave the place alone but that alone meant never to leave anybody in there because even people sitting in the office if he is pumping gas they steal cigarettes and other things. That alone meant never to leave anybody else in there or anybody— never to leave the premises. He knows that."

The statement, "He knows that," was ordered stricken upon motion. This appears to us to have been erroneous since the fair inference of the comment by the witness, in the light of the remainder of his testimony, was that petitioner was apprised of the direction never to leave the premises. Entirely without regard to the stricken statement, however, the record establishes petitioner's knowledge in relation to the direction, as Benedetto immediately thereafter was asked:

"Q. And he was specifically told to stay on the premises? A. Never to leave the premises."

On cross-examination the witness explained that the purpose of his direction to the petitioner never to leave the premises was to prevent petty stealing by loiterers. On re-direct examination he said that the phone in the office was some 12 to 14 feet from the door of the station and that the door could be closed. It also appeared that at the time of the accident the police were on the way to the scene as a result of calls from persons aroused by the noise and that when they arrived there they found petitioner in the pit; also that a neighbor had by that time come onto the street to see about the noise.

The deputy director in the Workmen's Compensation Division held that "petitioner was a volunteer at the time he left his place of employment and went across the street to stop the blowing of the horn." He further ruled "that the act of the petitioner in leaving his place of employment and going across the street to another gas station to stop the blowing of the horn of an automobile located there was not

part of his employment but was an act separate and apart from his duties for the respondent," and that for these reasons he had not sustained his burden of proof to establish that he suffered an injury as a result of an accident arising out of and in the course of his employment.

On appeal to the Essex County Court, the ruling in the Division was reversed. The county judge found that petitioner's explanation as to why he went across the street was entitled to credence; that "his leaving of his post was designed to serve the business of his master"; and that the risk to which he subjected himself must be held to have been an incident of his employment as distinguished from one, the genesis of which was dissociated from his duties and hence, voluntary and self-serving in nature." The court further found that petitioner had not violated any orders pertaining to his employment; that the requirement that he should not leave the premises alone was met by petitioner, notwithstanding his crossing of the street, either because the premises were left in the custody of "Frankie" or because they were at no time beyond petitioner's view. He also held that respondents' contention that compensation should be disallowed because petitioner was engaged in tampering with a motor vehicle, in violation of *R. S.* 39:4–49, was without merit since his actions did not amount to malicious conduct resulting in damage to or loss of dominion over a vehicle of another and, therefore, did not transgress the intent of the statute.

▉▉ In undertaking the resolution of this appeal, we may make new or amended findings of fact when necessary to accord with substantial justice, *R. R.* 1:5–3; 2:5, but are to be mindful of the principle that where a County Court reverses a finding of fact by the Workmen's Compensation Division, we are to accord much weight to the finding of the County Court "and not disturb it unless we are well satisfied that the finding is a mistaken one" either in fact or in law. *Galloway v. Ford Motor Co.*, 7 *N. J. Super.* 18, 23 (*App. Div.* 1950); *Vandenberg v. John De Kuyper & Son*, 5 *N. J. Super.* 440, 447 (*App. Div.* 1949).

In our opinion, the County Court erred in one of its factual conclusions and was thereby led into material legal error. We find it unnecessary to determine whether, as the County Court found, petitioner was in fact proceeding about the business of his employer rather than solely to accommodate the neighbors and assuage his personal irritation and impatience at the continuance of the noise when he went across the street. Much could be said to support the conclusion of the deputy director that petitioner was not in fact on the business of his employer at the time. It is difficult to give credence to his explanation that he had to stop the noise in order to be able to hear on the phone, in view of the ease with which he might have solved that problem by the simple expedient of closing the door when he answered the phone. However that may be, the judgment under appeal must be reversed because the substantial preponderance of the evidence leads to our firm finding of fact that petitioner was specifically enjoined by his employers not to leave the premises, and thence to our conclusion in law that his injury while so doing takes him out of the coverage of the statute.

Petitioner's testimony that he was told "time and again" not to "leave the premises alone" is, on its face, susceptible either of the construction that he was not to leave the premises unattended or that he was not to leave them at all. Any doubt on this score, however, was eliminated by the testimony offered by appellants to the flat effect that petitioner was not to leave the premises. We do not believe the County Court was justified in discarding this testimony for the mere reason that the appellant, Benedetto, explained what was meant by the instruction, "not leaving the premises alone," particularly when it is clear from his testimony that his meaning in that regard, i. e., that the petitioner was not to leave the premises, was made known to petitioner. The rule which appellants contend they fixed to govern petitioner's conduct was reasonable and the testimony on their behalf as to its existence credible. No attempt was made by petitioner to contradict or impair Benedetto's testimony by way

of rebuttal. There is no fair basis upon which we can ignore it.

Even if we were to indulge petitioner's argument and the County Court's finding that the working rule was that petitioner should not leave the premises unattended, the rule was here breached. "Frankie" had no relationship or responsibility to appellants. Nor, insofar as they were concerned, as was testified on their behalf, was he an authorized custodian of the premises. The premises were indeed left unattended when petitioner left to stop the noise.

The authorities establish beyond any possibility of misconstruction that where an employee disobeys "specific instructions limiting the sphere of the *locus* of the employment" any resulting injury is thereby taken out of the application of the statute as it then does not arise out of and in the course of the employment. *Reimers v. Proctor Publishing Co.*, 85 *N. J. L.* 441 (*Sup. Ct.* 1914); *Reis v. Breeze Corporations, Inc.*, 129 *N. J. L.* 138, 145 (*Sup. Ct.* 1942); *Bigos v. Waddill & Skelly*, 4 *N. J. Super.* 3, 7 (*App. Div.* 1949). Nor does it make any difference, as was urged for petitioner at the oral argument, that he left the *locus* of employment to do what seemed to him his job for appellants, assuming he did. The circumstance that they were actually engaged in work appertaining to their employment at the time they had left the *locus* of employment did not help the petitioners in the *Reimers* and *Bigos* cases, *supra*.

We are, moreover, satisfied that appellants' instructions to petitioner were a command and in the nature of a fixed and mandatory working rule, rather than a mere admonition or warning. *Cf. Wettslein v. Whitall-Tatum Co.*, 127 *A.* 323, 324, 3 *N. J. Misc.* 99 (*Sup. Ct.* 1925); *Waskevitz v. Clifton Paper Board Co.*, 7 *N. J. Super.* 1 (*App. Div.* 1950).

We are therefore constrained to find that petitioner's disobedience of his employers' standing instructions took him out of the sphere of the *locus* of his employment and thereby made his consequent injury non-recoverable. For this reason, the judgment below must be

Reversed.

GOLDMANN, S. J. A. D. (dissenting). I would affirm the judgment of the County Court.

My brothers of the majority find it difficult to give credence to petitioner's explanation that he had to stop the noise in order to be able to hear the phone. This aside, they hold that the judgment under review must be reversed "because the substantial preponderance of the evidence leads to the firm finding of fact that petitioner was specifically enjoined by his employers not to leave the premises" and therefore, as a matter of law, "his injury while so doing takes him out of the coverage of the statute."

As night attendant at respondents' station it was petitioner's job to wait on customers, serve them with gasoline and oil, and answer the telephone. Part of defendants' business was towing cars; in case a phone call for towing came in petitioner was to take the message and relay it to one of the respondent partners. Between 1:00 and 2:00 o'clock on the morning of June 11, 1953 the horn of an automobile parked in the closed gas station across the street shorted and began sounding. With petitioner at the time was one "Frankie," who occasionally visited him in the early hours. The horn had been blowing for some minutes when the phone rang. Petitioner testified he "couldn't understand nothing on the phone." The neighborhood was awakened; "people yelled from either side of the building to tell me to stop the noise and I told them it wasn't in my place." The continued blowing of the horn "irritated" petitioner; he said; "I wasn't able to answer the phone or nothing, and everybody was looking and yelling at me so I thought I'd go across the street and stop it." He did, and then fell into the grease pit at the other premises on his way back, with the result that he suffered the femur fracture and disabilities for which he seeks compensation.

In dismissing the claim petition, the deputy director did so only because he concluded that petitioner was a volunteer when he left his place of employment and went across the street to stop the blowing of the horn, an act deemed no part of his employment but rather one that was quite separate and

apart from his duties. As the County Court noted, the deputy director, who heard and observed the witnesses, seems not to have been unconvinced of the happening of these events, notwithstanding his disallowance of compensation. The respondents had urged before the County Court that the ringing of the telephone at the time indicated was inherently improbable, so that petitioner's alleged inability to hear the phone message was to be viewed as incredible. The short answer to this contention is that respondents made no effort to discredit this account, either on cross-examination of petitioner or by affirmative proof. There is nothing in the record that casts even a shadow of doubt upon petitioner's story. His unchallenged and unrefuted testimony cannot and should not be capriciously rejected. *In re Perrone's Estate*, 5 *N. J.* 514 (1950).

Since towing service was part of respondents' business, the answering of the telephone was obviously an important part of petitioner's duties. He recognized this to be so, for he testified that because of the noise from the horn "I couldn't take care of the phone like I should and answer them when they called * * *." The County Court concluded that his leaving of his post was designed to serve the business of his master; "it was motivated by his desire to restore that reasonable degree of quietude which would enable him to intelligently accept calls for service." I agree with the court that in the circumstances the risk to which petitioner subjected himself must be held to have been an accident arising not only in the course of but also out of the employment, as distinguished from one whose genesis was dissociated from his duties and hence voluntary and self-serving in nature. See *Geltman v. Reliable Linen & Supply Co.*, 128 *N. J. L.* 443, 446–447 (*E. & A.* 1942); *Gargiulo v. Gargiulo*, 13 *N. J.* 8, 12–13 (1953). The principles there enunciated by our highest court, albeit in a factual setting substantially different from the one at hand, are equally applicable here. A risk may be unusual, and unforeseen, but where it is reasonably connected with the work in some sense, or fur-

thers the interest of the employer, it arises out of the employment.

The majority concludes that the County Court judgment must be reversed inasmuch as petitioner disobeyed his employers' standing instruction limiting the sphere of the *locus* of his employment, thereby making his consequent injuries non-compensable because not arising out of and in the course of the employment. It therefore becomes important to analyze the testimony relating to these instructions.

Petitioner readily admitted that prior to the date of the accident respondent Benedetto "spoke to me time and again never to leave the gas station alone." Benedetto, when asked on direct examination what his instructions to petitioner were, answered:

"Well, to do his job, sell gas and oil, answer the phone calls, if anything came in never to leave the place alone but that alone meant never to leave anybody in there because even people sitting in the office if he is pumping gas they steal cigarettes and other things. That alone meant never to leave anybody else in there or anybody—never to leave the premises. He knows that."

"He knows that" was objected to as a conclusion of the witness, and stricken. The striking was proper at that point in the testimony, and respondent did not object to the ruling. Directly after this Benedetto broke in with this volunteered statement:

"As a matter of fact, he was also reminded the night before this accident happened specifically something occurred and he was reminded again that night never to leave it alone. That's what probably took him five minutes for him to go over there."

Immediately following this, counsel for respondents asked the question, leading and significantly different from what the witness had just testified: "And he was specifically told to stay on the premises?" To which Benedetto answered: "Never to leave the premises." He then explained his purpose was to prevent petty pilfering by anyone "inside loitering or hanging around and sitting there * * *."

I find that petitioner's instructions were simply "never

to leave the place alone"—nothing more. Benedetto's explanation as to what he "meant" by the word "alone" should not defeat petitioner's claim. In his own mind he may have "meant" that petitioner was "never to leave anybody in there"—that is, in the office of the gasoline station—in order to prevent stealing. But a reading of his testimony fails to show that in telling petitioner he was never to leave the place "alone" Benedetto ever made clear to him that by this he meant all that he said on the witness stand. The instruction was not accompanied by the extended definition of the word "alone" proffered on direct examination. It is not difficult to understand why the County Court rejected Benedetto's testimony relating to the meaning of "alone" and characterized his testimony as a *post facto* rationalization of what he expected and intended his employee to understand and the reasons motivating the order.

Consequently, I agree with the County Court that petitioner was not in violation of the terms of the direction "never to leave the place alone." Uncontradicted is petitioner's testimony that he left his companion "Frankie" in the station when he went across the street. Additionally, at no time was he more than a city street's width from his place of employment, so that he had it within sight at all times. He did not leave the station "alone." Under the circumstances, it cannot be said that petitioner's conduct put him beyond the pale of employment and into a voluntary venture of his own.

To take one out of the course of employment because of disobedience of orders, there must be a willful disobedience of a specific order limiting the sphere or *locus* of the employment, and not one merely admonitory in nature. The order must be clear and unequivocal so that the employee may know what he is or is not permitted to do. The order here did not have that quality; as already observed, there was no proof that the meaning with which Benedetto invested his order was ever conveyed to petitioner. Contrast the orders in *Reimers v. Proctor Publishing Co.*, 85 *N. J. L.* 441 (*Sup. Ct.* 1914); *Reis v. Breeze Corporations, Inc.*, 129 *N. J. L.*

138 (*Sup. Ct.* 1942); *Bigos v. Waddill & Skelly*, 4 *N. J. Super.* 3 (*App. Div.* 1949), cited by the majority, and in *Smith v. Corson*, 87 *N. J. L.* 118 (*Sup. Ct.* 1915)—all commonly cited for the proposition that "disobedience of specific instructions limiting the sphere of the *locus* of the employment" takes a resulting injury out of the Workmen's Compensation Act.

What petitioner did was not in willful disregard of his employers' direction. Compare what was said in *Belyus v. Wilkinson, Gaddis & Co.*, 115 *N. J. L.* 43, 50 (*Sup. Ct.* 1935), as to "intentional or willful misconduct" which takes an injury out of the statute:

"*  *  *   The word 'willful' imports that the conduct was deliberate, and not merely a thoughtless act on the spur of the moment, or an act showing lack of judgment; it connotes the idea of premeditation, obstinacy and intentional wrongdoing  *  *  *.   There is no evidence tending to establish such misconduct.   There is a presumption against it."

If petitioner did something he believed to be necessary in the circumstances, it cannot be said, within the purview of our compensation law, that he willfully violated the order in question. As in *Wettstein v. Whitall-Tatum Co.*, 127 *A.* 323, 324 (*Sup. Ct.* 1925) (the report in 3 *N. J. Misc.* 99 is incomplete)—where the employer contended that decedent had disobeyed an order to stay out of the enclosure housing the transformer which electrocuted him—"*  *  *   conditions, doubtless in the mind of deceased, called for an attempt on his part to correct them,  *  *  *   and the resultant accident arose out of and in the course of his employment." Recovery was allowed, the court holding that the direction "to stay out of the place—it wasn't safe" was an admonition lacking the force of a command. *Cf. Waskevitz v. Clifton Paper Board Co.*, 7 *N. J. Super.* 1 (*App. Div.* 1950).

I concur with the County Court's holding that there is no substance in respondents' contention that petitioner may not recover because he was injured while performing an illegal act, namely, tampering with a motor vehicle, in violation of *R. S.* 39:4–49. As was said by that court, the obvious

purpose of the statute is to forbid malicious conduct resulting in actual or potential damage to, or loss of dominion over, a motor vehicle belonging to another.

The County Court determined that petitioner had suffered permanent disability amounting to 35% of total. It also allowed compensation for 22 weeks' temporary disability, and medical and hospital bills reasonably and necessarily incurred. Respondents do not contend that the award was in any respect erroneous.

Affirm.