65 N.J. Super. 311 (1961)
167 A.2d 815
EDWARD L. GREEN, PETITIONER-APPELLANT,
v.
BELL CLEANERS, RESPONDENT-RESPONDENT.
JAMES E. WHITE, PETITIONER-APPELLANT,
v.
BELL CLEANERS, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 3, 1961.
Decided January 24, 1961.
*312 Before Judges CONFORD, FREUND and KILKENNY.
Mr. Seymour B. Jacobs argued the cause for appellants (Messrs. David Roskein and Jacob L. Balk, attorneys).
Mr. Richard J.S. Barlow, Jr., argued the cause for respondent (Messrs. Lenox, Giordano & Lenox, attorneys).
The opinion of the court was delivered by KILKENNY, J.A.D.
The petitioners, James E. White and Edward L. Green, filed claim petitions for workmen's compensation against their employer, Bell Cleaners. They sustained injuries, admittedly, as the result of an accident on October 26, 1957, while they were riding, en route from Wrightstown to Browns Mills, New Jersey, in a truck owned by their employer and driven by White. At the time of the accident, White was driving another employee, Robert Lomax, to his home in Browns Mills.
The Deputy Director dismissed both petitions. He found that White was never authorized by the respondent employer, either expressly or by implication, to drive the truck to Browns Mills, even though White was then driving Lomax from work to his home there. He concluded that *313 this trip, four or five miles in a southerly direction, was such an unauthorized and material deviation from White's authorized, normal, and northwesterly course of travel between Wrightstown and his home in Yardley, Pa., as to constitute an abandonment by both petitioners of the employment relationship during the period of the deviation.
The Burlington County Court having affirmed the dismissal for the same reasons, the petitioners appealed to this court. As required in such cases, we have made a study and independent appraisal of the entire record for the purpose of making a determination according to our own considered judgment. Russo v. United States Trucking Corp., 26 N.J. 430, 435 (1958); Ricciardi v. Marcalus Mfg. Co., 26 N.J. 445, 448 (1958); Pellegrino v. Monahan McCann Stone Co., 61 N.J. Super. 561, 562 (App. Div. 1959), affirmed 33 N.J. 73 (1960).
The material facts are not in dispute. The respondent conducted a dry cleaning business within the confines of the Fort Dix military reservation. The petitioners were employed there by the respondent as a cleaner and presser respectively; and, in addition to his other duties, White drove one of respondent's four trucks. White, who lives in Yardley, Pa., more than twenty miles northwest of Fort Dix, had express authority from respondent to drive the panel truck, as a means of transportation to and from work. No special route of travel had been prescribed. Petitioner Green, who lived in Trenton, about eighteen miles northwest of Fort Dix and along White's usual course of travel, was advised by respondent's manager that he could ride daily with White to and from work. He did so, except on some occasions when White worked late and then the manager himself drove Edward Green home. Another employee, a Roger Green, not related to petitioner, who also lived in Trenton also rode daily to and from work in respondent's truck driven by White. Respondent's attorney admitted in the record that Rosen (respondent) was aware of the fact that White was picking up the two Green boys. *314 The uncontradicted evidence establishes that it was customary for all of respondent's truck drivers to pick up any employee who was going in the same direction. Thus, besides the two Greens, White had also driven several other employees, going his way, on occasions prior to the accident. Even the respondent's manager and his foreman frequently gave rides to employees. As White testified, without contradiction:
"Every one did it and Mr. Rosen [respondent] knew about it and he never kicked."
On the day of the accident, a Saturday and normally a short working day, petitioner Green, who finished work about 2 P.M., and Roger Green were picked up by White at Fort Dix at about 3:20 P.M. for their mutual customary homeward journey. About one mile from that pick-up, and as they approached Wrightstown, near the bus station there, they met another employee, Robert Lomax, who was walking along the road. White stopped the truck and picked up Lomax, who had missed his 3:22 P.M. bus. As White testified:
"I asked him where he was going and he said he was going home, so I said `Well, I might as well take you because I don't have anything in particular to do.'"
Lomax lived in Browns Mills about four or five miles south of the Wrightstown bus station and in the opposite direction from White's ordinary homeward course. In fact, White never before had driven any fellow employee home by going south from Fort Dix; and, at the same time, there was no express prohibition against doing so. Lomax was the only one of respondent's employees who lived in Browns Mills or in that area. He had always been driven to work by his uncle. While he had never before been driven home by White, another of respondent's drivers, Freddie Newberry, had driven him home on two or three prior occasions, when he had worked late. Testifying as *315 a witness for respondent, he admitted that it was "customary among the men to pick you up from time to time," and he felt free to ask any of respondent's drivers to pick him up, if going in his direction, "if he was off." Lomax had ridden on several prior occasions in the truck driven by White from the Fort Dix store in which he worked to Wrightstown, and sometimes in the morning from Wrightstown to the store.
After White picked up Lomax, at someone's suggestion White stopped at a Wrightstown liquor store, a few blocks away. Petitioner Green went in and purchased a pint of whiskey, with money "chipped in" by all of them. The two Greens and Lomax drank the whiskey in the truck outside the liquor store. There is no affirmative evidence that White participated in that drinking; and White himself denied that he drank any of the whiskey. This interlude of drinking and conversation lasted about 45 minutes. Thereupon, White turned the truck around and started for Browns Mills. About 15 minutes later, at about 4:55 P.M., and slightly north of Browns Mills, while trying to pass a vehicle on route 545, a 24-ft. wide highway, White collided head on with a vehicle coming in the opposite direction. The injuries sustained by him and by Edward Green in that accident formed the basis of their claims for workmen's compensation.
Respondent set forth in his answer to White's petition the additional defense that White was intoxicated at the time of the accident and that his intoxication was the natural and proximate cause of his injuries. Such a defense is provided for in the statute R.S. 34:15-7. However, at the conclusion of the testimony, the respondent conceded that this defense had not been proved and it was withdrawn. The Deputy Director expressly found the proof insufficient to support this defense and determined that the respondent was not able to prove it. The County Court made no finding as to the sobriety of either petitioner although it expressed an opinion that both petitioners had been drinking.
*316 On appeal, however, the respondent urges that the drinking episode furnished proof of petitioners' abandonment of their employment status even though the evidence was insufficient to support the statutory defense of intoxication. Such an approach has been generally criticized. See Olivera v. Hatco Chemical Co., 55 N.J. Super. 336 (App. Div. 1959), certification denied 30 N.J. 557 (1959); and Secor v. Penn Service Garage, 19 N.J. 315, 324 (1955). If the drinking interval was, as claimed, in itself an abandonment of employment, the abandonment had terminated when the journey was resumed. White v. Frank Z. Sindlinger, Inc., 30 N.J. Super. 525 (App. Div. 1954). The accident did not occur during the stop for the whiskey or while it was being consumed. The proofs were insufficient to show that any drinking was solely causative of White's injuries in the subsequent accident. Therefore, White would not be barred from recovery, even if he were then intoxicated. Kulinka v. Flockhart Foundry Co., 9 N.J. Super. 495, 505 (Cty. Ct. 1950) (Francis, J.C.C.), affirmed opinion below sub. nom. Bujalski v. Flockhart Foundry Co., 16 N.J. Super. 249 (App. Div. 1951), certification denied 8 N.J. 505 (1952). Of course, White's intoxication, if any, would not bar his fellow employee, Green.
Generally, injuries sustained by a workman while going to and returning from work are not considered as arising out of and in the course of the employment. But, as stated in Nicolasi v. Sparagna, 135 N.J.L. 131 (E. & A. 1947):
"injuries sustained by the workman while he is provided with transportation when going to or returning from his work are considered as arising out of his employment when such transportation is the result of an express or implied agreement between the employer and his workman, or when it has ripened into a custom to the extent that it is incidental to and part of the contract of employment, or when it is with the knowledge and acquiescence of the employer, or when it is the result of a continued practice in the course of the employer's business, and which practice is beneficial to both the employer and employee."
*317 The record discloses that the transportation of White to and from work in the respondent's truck was pursuant to express authority and agreement. The transportation of the petitioner Green was the result of the respondent's manager's advising him to ride with White. His doing so had ripened into such a daily custom that whenever White worked too late to give Green a ride home, the manager himself did so. The continued practice in Green's case was concededly within the knowledge and acquiescence of the employer. Hence both petitioners come within the rules set forth in the Nicolasi case, supra. Furthermore, White's implied authority to drive Roger Green and any other employees who lived along the route between Yardley and Fort Dix is also abundantly clear, so that injuries sustained by him or them while following that route at least in going to and from work would be clearly compensable.
There is no question that, in driving south four or five miles to Browns Mills, even though it involved only 15 or 20 minutes in time, to bring Lomax home, White was deviating from his usual route of homeward travel. However, the purpose of the trip was not a deviation from a general practice. An employee was being convenienced by being driven home. The evidence justifies the conclusion that this was considered by the employer a benefit to him also. It was not the first time that Lomax had been driven home by one of respondent's truck drivers, so that it was not unusual or unexpected by Lomax when White offered to do so. The issue is whether the deviation by White from his normal direction, with the extra mileage entailed in performing the service which had been customary with employees of the respondent, was material enough to constitute an abandonment of the employment during the period of time while the deviation was in progress.
The deviation cases are legion. See 51 A.L.R.2d 8 (1957). Both sides cite a number in support of their respective contentions. One point is clear. There are varying degrees of deviation, from a simple detour to the complete *318 abandonment of the employer's business to serve some personal end. In measuring the legal effect of a deviation, the guide posts seem to be the materiality of the deviation and the purpose thereof. Where the deviation is slight, the employer generally remains responsible during the period thereof; and where it is material the employer is generally relieved.
The following cases are a few illustrations of slight deviations or detours by employees, during which the employer remained liable, even though in each instance the deviation was for a purpose personal to the employee and not in furtherance of the employer's business. DeBello v. Reep & Blackford, Inc., 2 N.J. Misc. 456 (Sup. Ct. 1924), affirmed 101 N.J.L. 218 (E. & A. 1925); Dunne v. Hely, 104 N.J.L. 84 (E. & A. 1928); Shefts v. Free, 105 N.J.L. 577 (E. & A. 1929); Lohman v. Lindeman, 9 N.J. Misc. 225 (Sup. Ct. 1931); Wasserman v. Schnoll, 129 N.J.L. 224 (Sup. Ct. 1942), affirmed Wasserman v. Schwartz, 130 N.J.L. 176 (E. & A. 1943). A fortiori where the slight deviation was not for the employee's benefit, but in pursuance of a matter which served the interest of the employer, the latter was held responsible despite the deviation. Fullmer v. Scott-Powell Dairies, 111 N.J.L. 44 (E. & A. 1933); Green v. DeFuria, 19 N.J. 290 (1955), reversing 34 N.J. Super. 521 (App. Div. 1955); and Hill Transportation Co. v. Everett, 145 F.2d 746 (Cir. 1944).
On the other hand, a material deviation by an employee to serve a purpose unrelated to an employer's business relieves the employer of responsibility during the term of the deviation. Thus, Clegg v. Interstate Ins. Co., 130 N.J.L. 307 (Sup. Ct. 1943) held that an employee, who travels 35 miles beyond the point where the business of the employer required him to go, in order to keep a personal engagement to pick up his wife, is not entitled to compensation for his personal injury because he had abandoned his employment. In Dooley v. Smith's Transfer Co., 26 N.J. Misc. 129 (Work. Comp. Bur. 1948), the employee *319 was denied compensation upon a showing that he quit work at 4:30 P.M., proceeded to make a round of the taverns, and was injured at 2:30 A.M., while driving his car used in connection with his work. But in that ten-hour interval devoted to drinking and attendance at a movie, the employee had done nothing related to his employment and had consumed so much liquor that his own willful misconduct brought the injury upon himself. In Cole v. Borough of Keansburg, 17 N.J. Misc. 380 (Com. Pl. 1939), the petitioner was a helper on a truck operated by a fellow employee. After performing his usual tasks the petitioner and the driver took a load of sod belonging to a friend and transported it to a cemetery plot owned by the friend. It was held that petitioner abandoned his employment when he became aware before the accident that he was doing something unrelated to his job, and in knowingly disobeying the specific instructions given to him by his superior. Koeppel v. Irvington Window Cleaning Co., 133 N.J.L. 303 (E. & A. 1945) states the rule that where an employee sustains an injury while engaged in an activity for his own personal benefit, such an injury is not compensable as it is not considered to be within the course of employment. Particularly is this so, where there is a temporary departure from the employer's business on a mission for the employee's sole benefit. Stinson v. Dairymen's League Co-op. Ass'n, Inc., 14 N.J. Misc. 671, 186 A. 687 (Dept. Labor 1936).
It is significant that in each case where an employer was deemed not liable, the deviation was obvious and material, and the deviating employee was doing something for the benefit of himself or a friend and wholly unrelated to his employment. In the instant case, White's geographical deviation of four or five miles was relatively slight and was not for his own benefit or convenience. He was performing a service in furtherance of his employer's general interest, in bringing an employee home who had missed his bus. White's own selfish interest would have dictated *320 nothing more than sympathy for the fellow employee, Lomax. It was a Saturday afternoon and White's work for the week was done. He could have started his journey homeward in the usual northerly direction and left Lomax to solve his own problem of how he would get home. But, instead, he undertook the trip to Browns Mills, which was not unreasonable and which had a tendency to keep Lomax a satisfied employee in the respondent's employ.
The customary practice of furnishing transportation to fellow employees in the respondent's vehicles served the employer's interest by the consequent improvement of employer-employee relations which it generated. Respondent's employees were engaged in piece-work during long and irregular hours on a military reservation where ordinary commercial transportation was limited. By providing transportation in the company vehicles, employees were enabled to get to work on time in the morning and they enjoyed a means of going home at night whenever they worked late. The arrangement was not entirely altruistic, because it enabled the employer to keep personnel who might not otherwise put up with difficult problems of transportation.
A deviation of four or five miles could be material in some sections of New Jersey under certain circumstances. But we hold that such a distance in the comparatively open area of Browns Mills where highway traffic is not heavy, and involving an additional half-hour at most of traveling time, was not so material as to constitute an abandonment of employment during that relatively short time and distance. Especially is that so, when White's purpose was to serve in a general way the best interests of the employer, as recognized by the general custom known to the employer.
In Green v. De Furia, supra, the Supreme Court allowed workmen's compensation to an attendant at a gasoline service station who left the station, in violation of his employer's explicit instructions, to go across the street to silence a sounding horn on an unattended vehicle. The Supreme *321 Court noted that, in deference to the broad and liberal interpretation to be accorded to workmen's compensation laws,
"the courts have extended the concept of `arising out of the employment' to include acts normally outside the employment performed for the benefit of third persons but the effect of which is to foster public good will toward the master."
It further stated, 19 N.J., at p. 299:
"it is clear that regardless of how rigid an employer's work order may be, there are always situations which will occasionally arise which justify a departure from instructions and which the employer would have countenanced had he been present. * * * the scope of the employment is impliedly extended to include the performance of any act designed to * * * further the employer's interest."
Applying that test, White's relatively slight deviation from his homeward course of travel in driving Lomax to Browns Mills did not disentitle him from recovering workmen's compensation. It follows that the petitioner Green, who was properly being transported by White, may also recover. Robinson v. Federal Telephone & Radio Corp., 44 N.J. Super. 294 (App. Div. 1957), considering whether an employee-passenger could be burdened with a driver's misfeasance, held that such an employee would be considered as engaging in his employer's business until "he realized or should have realized that they had departed from a reasonable homeward path and acquiesced therein."
Considering that Green was enjoying an 18-mile ride to Trenton, it was not unreasonable for him to ride a few extra miles south to Browns Mills, whence they could either return to Wrightstown, or pursue alternate routes to Trenton. To rule otherwise would require him to give up the benefit of an 18-mile free ride home, because a co-employee living 5 miles in an opposite direction was being accommodated by White, who controlled the movement of the vehicle.
Since the extent of the respective disabilities, both temporary and permanent, and the hospital, medical and other *322 expenses have been stipulated, the judgment is reversed as to both petitioners and the cases are remanded for the entry of awards in their favor based on the stipulation.