72 N.J. Super. 233 (1962)
178 A.2d 226
JOSEPH DeVITO, PETITIONER-RESPONDENT,
v.
MULLEN'S ROOFING COMPANY, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 29, 1962.
Decided February 9, 1962.
*234 Before Judges PRICE, SULLIVAN and LEWIS.
Mr. Theodore W. Geiser argued the cause for appellant (Messrs. Shaw, Pindar, McElroy, Connell & Foley, attorneys; Mr. Geiser, of counsel).
Mr. Albert L. Cohn argued the cause for respondent (Messrs. David & Albert L. Cohn, attorneys; Mr. Richard Lifland, on the brief).
The opinion of the court was delivered by LEWIS, J.A.D.
Petitioner, Joseph DeVito, sustained an injury on June 27, 1955 arising out of and in the course of his employment. While mopping a roof, he fell through a hole and his right hand and forearm were badly burned when they came in contact with hot tar which he was carrying in a pail. He was awarded (June 13, 1956) 27 1/2% permanent disability, "orthopedic in nature," by the Division of Workmen's Compensation. Subsequently, July 10, 1958, pursuant to N.J.S.A. 34:15-27, petitioner filed an application for a review of the award, alleging: "Pain has increased; increased loss of movement, power or strength, skin peels and cracks repeatedly and bleeds on slight contact; neurological, anxiety, worry, nervousness." He testified at the hearing that: he could not work "as good"; he suffered pain and his arm continued to crack and bleed, saying "I am afraid it is going to get cancerous because it does not heal and I get very nervous about it. I am breaking out all over now"; in February 1959 he first noticed red blotches developing on his legs, arms and *235 stomach; and, in September of that year, he consulted Dr. Irwin L. Maskin, a specialist in dermatology, for treatment.
Dr. Maskin diagnosed his condition as a skin eruption technically known as lichen planus. There was uniformity of opinion among the several examining doctors as to the diagnosis of petitioner's dermatological impairment. The divergent views of the medical experts were directed to the causative relevance between the accident in 1955 and petitioner's current disabilities.
In response to a hypothetical question which embraced petitioner's accident burns (third degree), complaints of worry, nervousness and fear of cancer, Dr. Maskin opined: "* * * in all probability there was a causal relationship between his initial episode of lichen planus and this increasing amount of nervous tension." He further testified that lichen planus is usually pruritic, is frequently associated with nervous tension, anxiety or various other psychological disturbances and, in a majority of cases, either direct trauma or an episode of psychiatric trauma is a triggering mechanism. Said the witness:
"Apparently this man [DeVito] had been getting more and more nervous in the two years since the burn episode and it would seem logical to assume that the psychiatric trauma to which he was subjected, this cancer phobia which in some individuals is a very real and severe thing."
Supporting testimony was adduced from Dr. Nelson C. Policastro, a neuropsychiatrist expert, who examined petitioner on November 5, 1958. He stated that petitioner had a post-traumatic neurosis manifested by nervousness, anxiety and feelings of selfconsciousness, and that DeVito was "definitely worried about his skin condition at the time I saw him." He unequivocally related the "anxiety" of the petitioner with his dermatitis condition.
Respondent-appellant, Mullen's Roofing Company, denied that there had been any increase in petitioner's disability since the original determination by the Division. It produced *236 two physicians as witnesses  Dr. Joseph F. Zigarelli, a specialist in neurology and psychiatry, who had examined petitioner on three occasions, and Dr. Joseph Shapiro, a diplomate in dermatology and syphilology.
The substance of Dr. Zigarelli's testimony was that somatic complaints or dermatological conditions would usually occur within six months to one year after an alleged injury. He was of the opinion that there was no causal relationship between the skin lesions involving the lower extremities of the petitioner and the injuries he sustained in 1955. Under cross-examination the doctor admitted that many idiopathic skin lesions are attributable to neurogenic or psychogenic factors, the outbreak of skin eruptions is assisted by an acute, severe or prolonged nervous strain, and that a qualified dermatologist was in a better position than he to give an opinion as to causal relationship "in this particular instance."
Dr. Shapiro examined the petitioner on December 31, 1960. He did not believe that lichen planus was causally related to petitioner's accident. His testimony was: "Certainly there is no reasonable probability of any causal relationship with that great a time interval [1955 to 1959]." With reference to the question of whether lichen planus could be triggered by prolonged nervous strain, he testified: "It is quite possible, but it is not within my experience." As to the treating physician he said: "I concede he is in a better position to judge whether there is prolonged nervous strain."
It is generally recognized that a treating physician is in a better position to express an opinion as to cause and effect than one making an examination in order to give expert medical testimony. Bober v. Independent Plating Corp., 28 N.J. 160, 167 (1958); Fusco v. Cambridge Piece Dyeing Corp., 135 N.J.L. 160, 162 (E. & A. 1946). Compare Markant v. Hommer Tool & Mfg. Co., 28 N.J. Super. 566 (Cty. Ct. 1953), relied upon by appellant, which is distinguishable in that the attending physician *237 in that case had not acquired any knowledge in the course of treatment which enabled him to give a more reliable opinion on causation than was given by the expert. In the present case, Dr. Maskin was not only the treating physician but a specialist in skin diseases who had spent three years in postgraduate training and was a diplomate of the American Board of Dermatology and a Fellow of the American Academy of Dermatology. Additionally, he had the benefit of Dr. Policastro's history and report of this patient.
The essential substance of appellant's contentions is predicated upon the lapse of time between the 1955 accident and the skin eruption that manifested itself in 1959. This is a positional concept which by-passes completely the intervening years of physiological and psychiatric developments and changes. The record solidly spans the period between the hot-tar burn (1955) and the lichen planus ailment (1959) with its persistent chain of consistent anxiety neuroses. The County Court was convinced, as was the judge of compensation  "The concatenation is actually simple: Burn  failure to heal  fear and anxiety  neurosis  lichen planus." It was not necessary that petitioner prove to a certainty his claim. The evidence established reasonable probability that his employment accident caused or proximately contributed to the conditions under which he was suffering. Ciuba v. Irvington Varnish & Insulator Co., 27 N.J. 127, 139 (1958); Bober v. Independent Plating Corp., supra, at p. 168.
The juridical philosophy recently enunciated by our Supreme Court in Dwyer v. Ford Motor Company, 36 N.J. 487 (1962), liberally interprets the scope of industrial compensation and is not limited to heart cases. Here, as there, we have questions unresolved by the science of the medical profession. It is apparent from the evidence adduced from the experts that the cause of lichen planus is not known with certainty, and "research men continue to look for organisms and irritants that may be causing the lesions." We adopt *238 as applicable to the pending litigation, the language of Chief Justice Weintraub in his concurring opinion in the Dwyer case:
"When the possibility of causal connection is accepted, we cannot deny relief in all cases simply because science is unable decisively to dissipate the blur between possibility and probability. In such circumstances judges must do the best they can, with the hope their decisions square with the truth, and with a willingness to consider in succeeding cases whatever contribution scientific advances may offer."
The totality of the record amply establishes reasonable probability of neuropsychiatric and dermatological disorders connected with petitioner's employment. The additional 12 1/2% partial disability allowed by the Division of Workmen's Compensation and affirmed by the County Court should not be disturbed by this court.
We affirm.