73 N.J. Super. 132 (1962)
179 A.2d 151
BERLIA ANNETTE GREEN, PETITIONER-APPELLANT,
v.
AL GREEN ENTERPRISES, INC., RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 26, 1962.
Decided March 15, 1962.
*133 Before Judges PRICE, SULLIVAN and LEWIS.
Mr. Solomon Golat argued the cause for appellant (Messrs. Talisman & Golat, attorneys; Mr. Golat, of counsel).
Mr. Arthur F. Mead argued the cause for respondent (Messrs. Mead, Gleeson, Hansen & Pantages, attorneys; Mr. Mead, of counsel).
The opinion of the court was delivered by LEWIS, J.A.D.
Petitioner, Miss Berlia Annette Green, appeals from the judgment of the Essex County Court affirming a determination of the Division of Workmen's Compensation dismissing her claim for work-associated disability.
*134 Miss Green was employed by respondent, Al Green Enterprises, Inc. (no relationship involved), to work at the cafeteria of the Ford Motor Company plant in Mahwah, New Jersey. Her duties included the cleaning and wiping of tables, incident to which she used water containing ammonia and a detergent identified as "Spic 'n' Span." She had been so engaged for 18 months when (in November 1959) she noticed skin eruptions on her fingers and hands. The plant physician advised the employee to see her family doctor for treatment. After three visits to a Dr. Platt, who gave her injections, the condition seemed to clear and she returned to work. Within a week thereafter the blemishes recurred and her supervisor directed her to "go home and stay until it got better." Miss Green testified "it never got better"  she did not thereafter report to work.
Initially, petitioner qualified for workmen's compensation benefits and received temporary disability payments for a period of four weeks. The only explanation advanced for such payments, in view of the employer's present contention, was that the temporary compensation "may have been paid in error." In any event, respondent is not now precluded from denying liability. Helminsky v. Ford Motor Co., 111 N.J.L. 369, 374 (E. & A. 1933); Mewes v. Union Bldg. & Construction Co., 45 N.J. Super. 88, 94 (App. Div. 1957), certif. denied 24 N.J. 546 (1957).
The skin eruptions persisted and petitioner consulted Dr. Irving Shapiro, a specialist in dermatology, who administered treatment to her "twice a week through January 19th of 1960 until December 20th of this year [1960]," except for approximately two weeks in January when she underwent treatment at The Harrison S. Martland Medical Center in Newark, New Jersey. The provisional diagnosis appearing in the hospital records was "contact dermatitis"; they further revealed that the patient was seen by the attending physician, Dr. Otto B. Hitschmann, whose progress notes contained this statement:
*135 "* * * follicular erythematous dermatitis. * * * on legs and feet with large erythematous spots around it confluent and involving the whole lower extremity covering toes completely partly with scales. Both forearms, dorsum of hand and wrists are covered with multiple roundish partly confluent blisters containing serous and/or purulent fluid.

* * * * * * * *
The impression is that of an acute Erythema Multiforme which might be superimposed on an old standing dermatitis or even fungus infection of toes & hands."
According to petitioner, the skin lesions extended to her legs "when I went into the hospital."
At the hearing before the Division (December 22, 1960), the judge of compensation examined appellant's hands in open court and commented: "How could you find anybody to hire her by the looks of her hands."
Dr. Shapiro testified that on the occasion of his first examination (January 1, 1960) petitioner had:
"a marked bullous and edematous dermatitis involving the fingers, hands, wrists and forearms. I considered this to be a severe contact dermatitis due to detergents, Spic 'n' Span, ammonia and other chemicals which she handled at her work, and I considered that she was in urgent need of treatment and I suggested that such treatment be furnished."
He further stated that her condition "deteriorated so seriously that she required hospitalization at the Martland Medical Center." Upon her discharge from the hospital, he resumed treatment. As to her condition at that time he said "she still had marked vesicular oozing and frosted dermatitis of the hands, fingers and forearms." On being questioned concerning petitioner's exposure to ammonia and cleaning compounds such as that commercially known as "Spic 'n' Span," and the part that such activity played in petitioner's entire dermatological picture, he expressed the opinion "that is the type of exposure which produced her initial eruption. Then when she relapsed, it again recurred; then she had the allergic dissemination and she is still suffering with some of the sequela."
*136 Based upon his examinations and treatment, and fortified by the hospital records, Dr. Shapiro explained the etiology of the patient's skin and physiological condition as follows:
"We frequently see an individual who developes a dermatitis due to contact, and then after repeated such attacks there is an explosive, what is known as, dissemination type of reaction. This disseminated dermatitis now spreads widely over the body. It is sort of an allergic and toxic form of reaction. Then, of course, there is some subsiderance."
He estimated petitioner's disability to be "25% of partial total" and testified that he considered her exposure to ammonia and detergents to be the "major competent producing cause of the condition present * * *." He concluded that the acute severe eruption which necessitated Miss Green's hospitalization was "an allergic sequelae to a severe infected dermatitis of the hands."
Dr. Jacob Bleiberg, whose qualifications as a dermatologist were admitted, gave testimony on behalf of respondent. He examined Miss Green on two occasions  March 29, 1960 and October 12, 1960  and determined that she had been suffering from erythema multiforme or lichen planus, commenting: "Neither of these diseases is industrial or occupational in origin." We note, parenthetically, that such a positive conclusion by the doctor is not in harmony with the factual findings of this court in a recent decision, DeVito v. Mullen's Roofing Company, 72 N.J. Super. 233 (App. Div. 1962), wherein evidence was adduced to establish reasonable probability that an employment accident caused or proximately contributed to petitioner's lichen planus disability. Furthermore, the doctor, in his testimony addressed to the subject of dermatitis resulting from detergents, made the observation that "[i]t is rarely an allergy." There is a connotation in such a statement that an allergen is possible, although infrequent. Under cross-examination, Dr. Bleiberg described erythema multiforme and said: "The cause of it is unknown, although it is always systemic or intrinsic."
*137 At the conclusion of Dr. Bleiberg's testimony, the judge of compensation, recognizing a debatable medical issue between two well-known dermatological experts, adjourned the hearing with the request that either Dr. Hitschmann or Dr. Salsberg (consulting physicians at the Martland Medical Center) be called to give testimony in the case. At the adjourned hearing (January 26, 1961), Dr. Hitschmann was produced as a witness for the respondent. He had no "personal recollection" of petitioner's case and his testimony related to his recital in the hospital records. He saw Miss Green only "once or twice, at the most three times." The physician, reading from the records, declared that he had diagnosed petitioner's condition as erythema multiforme, saying:
"* * * there is hardly any erythema multiforme known which is caused on contact, because erythema multiforme is not the manifestation rather of a primary allergy or sensitization  whatever you want to call it  but rather the expression of a vesicular allergy, an allergy of the vascular apparatus of the skin."
He maintained that ammonia would not have a direct allergic effect, but, when cross-examined, he admitted it to be an allergenic material in "very rare cases."
There emerges from the conflicting medical theorems the fact that science has not yet reduced to a certainty the cause of some skin lesions including eruptions characterized as erythema multiforme. Respondent urges that any resultant contact dermatological condition, causally related to employment, would be limited to the exposed area of the body. The postulation advanced by the treating physician, Dr. Shapiro, was that Miss Green's condition, involving her entire body, was caused by an allergic reaction to the use of ammonia and detergents. This tendered hypothesis was opposed, but not discredited, by the testimony of Dr. Bleiberg and Dr. Hitschmann. The possibility of ammonia's being an allergen was unrefuted by the expert witnesses  the disparity in their respective opinions related to the *138 frequency or rarity of such instances of allergy. The circumstances, coupled with petitioner's expert proof, warranted an inference that her injury was work-connected.
The testimony of Miss Green that she never had a break-out skin condition prior to November 1959 is unchallenged. For the preceding 18 months she had been employed by respondent. An employer, under our law, takes "employees with all their mental, emotional, glandular and other physical defects or disabilities." Reynolds v. General Motors Corp., 40 N.J. Super. 484, 488 (App. Div. 1956). Accord, 1 Larson, Workmen's Compensation Law, sec. 12.20, p. 170 et seq.; Wexler v. Lambrecht Foods, 64 N.J. Super. 489, 501 (App. Div. 1960), certif. denied 34 N.J. 326 (1961).
In our evaluation of the probative force of the medical evidence, we take cognizance of the greater opportunity of the treating physician "to know, understand and decide upon the producing cause of the patient's condition." Bober v. Independent Plating Corp., 28 N.J. 160, 167 (1958). We have given due regard to the opportunity of the hearer of the evidence to judge of the credibility of the witnesses. Russo v. United States Trucking Corp., 26 N.J. 430, 435 (1958); see also Green v. Bell Cleaners, 65 N.J. Super. 311 (App. Div. 1961), affirmed 35 N.J. 596 (1961). The test for our guidance has been probability, not certainty. Ciuba v. Irvington Varnish & Insulator Co., 27 N.J. 127, 139 (1958).
According to the medical evidence it seems clear that the skin is "a single organ which performs many functions." It is reasonable to accept the theory espoused by Dr. Shapiro that the offending assaults and treatments of this organ eventuated in an allergic dissemination with resultant sequelae over parts of the body not actually exposed to the irritants. Cf. Roberts v. Beitler, 34 N.J. Super. 470 (Cty. Ct. 1955). Causal connection was medically possible and we are convinced, under the circumstances of this case, that relief should not be denied "simply because *139 science is unable decisively to dissipate the blur between possibility and probability." See concurring opinion of Chief Justice Weintraub in Dwyer v. Ford Motor Company, 36 N.J. 487 (1962).
The case is remanded to the Division to make a determination as to the degree of partial permanent disability.
Reversed and remanded.