Eddie GRIFFIN, Plaintiff-Appellant,

v.

Alvin DOSS, Defendant-Respondent.

No. 8555.

Springfield Court of Appeals.

Missouri.

Jan. 30, 1967.

Richard D. Moore, Newton C. Brill, West Plains, for plaintiff-appellant.

Patrick O. Freeman, Jr., Thayer, A. W. Landis, West Plains, for defendant-respondent.

TITUS, Judge.

An eastbound pickup truck operated by defendant Alvin Doss encountered a westbound left-turning truck on U. S. Highway 60 in Shannon County, Missouri, at 5:40 A. M. Friday, May 31, 1963. Plaintiff Eddie Griffin and Ronald Holland (employees of Alvin Doss and Ralph Harper, partners doing business as Doss and Harper) were passengers in the Doss vehicle. Claiming to have suffered $15,000 damages because of the collision and defendant's negligence, plaintiff filed this tort action against Doss in the Howell County Circuit Court. Defendant's answer imposed defenses, among others, that plaintiff's exclusive remedy against him was under the Missouri Workmen's Compensation Law and because plaintiff had accepted compensation payments and medical aid, he should be held to have elected that remedy, or be held to have waived his right to sue in tort, or be estopped from maintaining the damage suit. By agreement (or at least without objection in either the circuit court or in their briefs here) the parties separately tried the noted defenses without a jury. The issues were resolved for defendant by the trial court and plaintiff has pursued the necessary steps to bring the matter to us.[1]

The entree of the repast served the trial court consisted of election, waiver, and estoppel. Those issues are now abandoned[2] and the portion presented on appeal was somewhat of a side-order in the circuit court. Consequently if we cannot meticulously materialize every facet of the remaining issue that should have been developed for the record, it is due to the particular attention afforded the main course at trial and the lesser emphasis given to preparing our dish.

The headquarters of the partnership of Doss and Harper is located in West Plains, Missouri. The partnership is principally engaged in hauling gravel for the Missouri State Highway Department within a 100 to 150 mile radius of West Plains, and fifty to seventy-five per cent of the work is away from the immediate vicinity of that city. The partnership does not "have any one set gravel plant" and its equipment is moved from job to job to a site where gravel is handy and available. The partners and their employees were generally operat-

1. Defendant having prevailed in the trial court, the amount in dispute is the $15,-000 prayer of the petition. Appellate jurisdiction is, therefore, vested in this court. V.A.M.S. Constitution, art. 5, §§ 3 and 13; V.A.M.S. § 477.040; Simmons v. Friday, 359 Mo. 812, 224 S.W.2d 90, 93(3).

2. The Missouri Workmen's Compensation Law is wholly substitutional in character and cannot be altered by election, waiver, estoppel or contract. Roberts v. Epicure Foods Co., Mo., 330 S.W.2d 837, 841(4); Godwin v. Cape Central Airways, Mo., 318 S.W.2d 196, 199; Marie v. Standard Steel Works, Mo. (Banc), 319 S.W.2d 871, 875(3).

ing under and subject to the provisions of the Workmen's Compensation Law of Missouri.

The vehicle Doss was driving at the time of the accident was personally owned by him. Nevertheless, the partnership "paid all the bills, insurance, gasoline, tires * * * took care of the expenses of the * * * pickup * * * on any particular job we were on we used it like it was a company pickup."

Plaintiff resided three miles south of Peace Valley, Missouri, and one-half mile from defendant's residence. [Peace Valley is approximately twelve miles north of West Plains and one mile east of Highway 17, which travels north from West Plains some twenty or twenty-two miles before joining U. S. Highway 60.] Plaintiff had been employed as a truck driver by Doss and Harper for two or two and a half years before May 31, 1963. Initially he worked for $1.75 per hour, but at the time of the casualty was paid at the rate of $2.00. His pay commenced "when I got on the job," and he worked five days a week, Monday through Friday, weather permitting. (The bracketed statement is not of record but derived from judicial notice of the geographical location of cities in the state and distances between. Bishop v. Covenant Mutual Life Ins. Co., 85 Mo. App. 302, 306; Hood v. M.F.A. Mutual Insurance Co., Mo.App., 379 S.W.2d 806, 810 [4]).

It is suggested that even though plaintiff was injured in an "on-the-job" accident, he should be permitted to sue Doss individually because he was an employee of the partnership. Missouri follows the common law or aggregate theory of partnership and this makes plaintiff an employee of each individual partner. Ergo, if the accident arose "out of and in the course of [such] employment," plaintiff's exclusive remedy against Doss is under the workmen's compensation act. Anderson v. Steurer, Mo., 391 S.W.2d 839, 843(5–7); Brollier v. Van Alstine, 236 Mo.App. 1233, 163 S.W.2d 109, 113–114.(4).

The distance and direction from West Plains of the place of work determined the transportation mode. When work was performed near West Plains, employees sometimes provided personal transportation to "the shop" at West Plains and from there rode a partnership vehicle to the job site. If work was to be done north of West Plains, plaintiff sometimes drove to Highway 17 to "catch a ride" in a partnership vehicle and would be returned to that location after work to retrieve his automobile which he had parked near the highway that morning. Also, because of the nearness of the Doss and Griffin homes, Doss, on occasion, would "pick up" plaintiff at his home or plaintiff would go to the Doss residence for his ride. Occasionally employees drove their personal cars to the job site, but the record indicates this was done only if they had missed their ride in a partnership vehicle or had personal business or reasons for using their own automobiles. Transportation provided by the partnership was either in a pickup truck or station wagon driven by the partners.

When the job site was some distance from West Plains the employees rode to work early Monday morning in a partnership vehicle, and remained at the place of work the ensuing week until returned home or to West Plains on Friday after work. Only one exception to this practice appears in the record during the time of plaintiff's employment. On a job at or near Doniphan, Missouri, the employees decided they preferred staying home at nights rather than spending the week in a motel. In this instance, the employees took turns driving their personal cars and transporting their fellow employees.

Employees were not paid for the use of their cars nor for any of the time consumed in transportation to or from a job site. With the exception of the Doniphan job, Doss testified the employees "never did drive [their own cars] on these long jobs," and that plaintiff "wouldn't use his car one per cent of the time * * * to drive complete to the job." The employees were

not charged for riding in vehicles provided by the partnership.

There was no specific written or oral agreement concerning transporting employees. Doss testified, "we didn't talk about getting to work like that." The requirement made of plaintiff when he was hired was "just meet the boys, that's all, meet the boys and go to work * * * [we furnished transportation] to help them out * * * we didn't want the boys to have to drive 100—75 or 100 miles to work. * * * Well, we furnished transportation because we'd have to pay the boys more money if they drove their cars to work, if they were going 75 or 50 miles. * * * And another reason * * * if we all go together, we'll get to work about the same time. If we had one coming fifteen or twenty minutes late, the others couldn't go to work until the whole crew gets on the job. We feel or I feel like its cheaper on us. * * * In other words, we'd have to pay the boys more on the hour if they drove their own cars to work."

Plaintiff testified there was no transportation "arrangements" but "that this arrangement for furnishing transportation to you" was "partly" for the mutual benefit of him and the partnership. Plaintiff said transportation in a partnership vehicle was not always available but was available a majority of the time. He denied the furnished transportation was a consideration for which he took the job. Although it would cost plaintiff "two to three dollars a day" for him to drive his own car, he said he would have driven his car daily for the same wages. He used the transportation supplied by Doss and Harper because "it was a lot cheaper to me to ride with them."

For two or three days prior to the accident plaintiff and the other employees of Doss and Harper had been working at Ellington, Missouri, a distance of 75 to 90 miles from West Plains. The day before the accident, May 30, 1963, was Memorial Day and the crew had returned to West Plains for the occasion. The record suggests the employees were initially transported to Ellington by the partnership and returned home by partnership transportation for the holiday. In any event, when the accident occurred plaintiff was being returned for work to Ellington in the Doss pickup together with a fellow employee, Ronald Holland. Doss picked up plaintiff at his home and Holland boarded the pickup at Mountain View, Missouri.

■ If the workmen's compensation law is to be the sole vehicle for plaintiff's recovery, his personal injuries by accident must have arisen "out of and in the course of his employment." V.A.M.S. § 287.120 (1, 2). "An injury arises out of the employment if it is a natural and reasonable incident thereof" and is "the rational consequence of some hazard connected therewith." The term " 'in the course of' the employment refers to the time, place, and circumstances under which the injury was received," and, "generally speaking, the scope of the contract of employment furnishes the determinative test as to whether or not the accident is compensable as 'arising out of and in the course of * * * employment.' " Hacker v. City of Potosi, Mo.App., 340 S.W.2d 166, 169–170(1–4); Heaton v. Ferrell, Mo.App., 325 S.W.2d 800, 803–804(2–5); and authorities cited in those cases.

Injuries received by an employee going to or returning home from work are usually said not to arise out of and in the course of employment.[3] However, exceptions to this broad assertion are far from rare.

A well-known text writer flatly asserts, "If the trip to and from work is made in a truck, bus, car, or other vehicle under the control of the employer, an injury during that trip is incurred in the course

3. Kammeyer v. Board of Education, Mo. App., 393 S.W.2d 122, 130(11); Heaton v. Ferrell, supra, Mo.App., 325 S.W.2d 800, 805(7); Gingell v. Walters Contracting Corporation, Mo.App., 303 S.W. 2d 683, 688(3).

of employment." Justification for this statement is claimed because "the employer has himself expanded the range of the employment and the attendant risks" and "although all traces of extra compensation or reimbursement [to the employee] disappears, control of the conditions of transportation remains as a ground of liability." Larson's Workmen's Compensation Law, Vol. 1, § 17.10, pp. 279–282. A similar statement, quoted without disapproval from the findings of "The Compensation Commission," appears in Howes v. Stark Bros. Nurseries & Orchards Co., 223 Mo.App. 793, 22 S.W.2d 839, 840: "Where an employer furnishes a bus to transport its employees to and from their work between a city and its plant, two miles distant, such transportation is incident to the employment, and an accident to an employee in connection with such transportation arises out of and in the course of the employment."

Our task would be over if we could accept at face value the pronouncements of Mr. Larson and Gingell, supra. However, most authorities investigate the scope of the employment contract to determine if the employee's activity at the time of injury arose out of and in the course of employment. When, as here, the activity is not expressly provided in the employment agreement, a determination is then made whether the injury arose from something that had by custom, practice, or otherwise become an incident of the employment.[4]

■ Regardless of what plaintiff contends as to the lack of arrangements "between you and Doss and Harper for your transportation to the job," we cannot fathom the intended implication it was sheer coincidence Doss had gone by for plaintiff at his home the morning of the accident, had stopped for Holland at Mountain View, and the three were riding in the pickup truck enroute to work at Ellington when the collision occurred at 5:40 A.M. These circumstances necessarily imply an understanding or agreement plaintiff was to receive transportation to the place of employment. Turnage v. State Farmers Mut. Tornado Ins. Co. of Mo., Mo.App., 388 S.W.2d 342, 349(7). Neither was this an isolated nor rare instance of plaintiff being transported to and from "out-of-town" jobs. Employees never drove their own cars "on these long jobs," and the sole exception (the Doniphan job) was created by the employees themselves and did not result from the failure of the employers to furnish the customary ride. "[I]njuries sustained by the workman while he is provided with transportation when going to or returning from his work are considered as arising out of his employment when such transportation * * * has ripened into a custom to the extent that it is incidental to and part of the contract of employment, or when it is with the knowledge and acquiescence of the employer, or when it is the result of a continued practice in the course of the employer's business, and which practice is beneficial to both the employer and employee." Nicolasi v. Sparagna, 135 N.J.L. 131, 50 A.2d 867–868(1).

It is of little import plaintiff was not paid wages until he "got on the job" nor remunerated for travel time if the furnished transportation was an incident of the employment agreement. Cf., B. & H. Passmore M. & R. Co. v. New Amsterdam Cas. Co., 10 CCA, 147 F.2d 536, 537–538.

4. Carriker v. Lindsey, Mo.App., 313 S.W. 2d 43, 47; Wamhoff v. Wagner Electric Corporation, 354 Mo. 711, 190 S.W.2d 915, 917, 161 A.L.R. 1454; Finley v. St. Louis Smelting & Refining Co., Mo. (Banc), 233 S.W.2d 725, 726; Garbo v. P. M. Bruner Granitoid Co., Mo.App., 249 S.W.2d 477, 480; 99 C.J.S. Workmen's Compensation § 235a, b, pp. 834–844; 58 Am.Jur. Workmen's Compensation § 218, pp. 725–726; Esquer v. Teresi, 105 Cal.App.2d 89, 232 P.2d 895, 897–898(3); Peski v. Todd & Brown, Inc., 7 CCA, 158 F.2d 59, 61; Green v. Bell Cleaners, 65 N.J.Super. 311, 167 A. 2d 815, 818(3), affd. 35 N.J. 596, 174 A. 2d 474; Annotation: 145 A.L.R., pp. 1033–1042.

"[T]ransportation to and from work may well be one of the incidents of the employment, and an accessory, collateral, or subsidiary part of the contract * * * something added to the principal part of the contract, as a minor, but none the less a real, feature or detail of the contract." Sylcox v. National Lead Co., 225 Mo.App. 543, 38 S.W.2d 497, 500. Under the circumstances of this case transportation could be viewed as a "fringe" benefit to employees not reflected in actual wages and the implied contract contemplated the "employees would be carried to and from their work but their wages would start upon arrival [at the job] and stop upon departure." Taylor v. Meeks, 191 Tenn. 695, 236 S.W.2d 969, 970(6).

■ The extended custom followed concerning transportation dispels that the rides afforded employees to and from "these long jobs" was nothing more than a gratuity. The right of the partnership to discontinue the rides as an implied incident of employment would not affect the situation. "So long as the employer did not discontinue the service and so long as the employee continued to ride as an incident to his employment, the legal relationship between the parties while the employee was so riding remained the same." Neyland v. Maryland Casualty Co. (La.App.), 28 So.2d 351, 355(5). Plaintiff agrees, though begrudgingly, the supplied transportation was "partly" for the mutual benefit of himself and his employers. "It is the rule that 'An injury suffered by an employee while performnig an act for the mutual benefit of the employer and the employee is usually compensable.'" Lampkin v. Harzfeld's, Mo., 407 S.W.2d 894, 897–898(6). This

rule is applicable to situations involving transportation of the employee by the employer as an incident of the employment. Johnson v. Aetna Casualty & Surety Co., 5 CCA, 104 F.2d 22, 23(1); Turnage v. State Farmers Mut. Tornado Insurance Co. of Mo., supra, Mo.App., 388 S.W.2d 342, 347; 8 Workmen's Compensation Text, Schneider, § 1712(d), pp. 41–42.

■ Principally on appeal we concern ourselves with whether the result obtained by the trial court was correct (Helmkamp v. American Family Mutual Insurance Co., Mo.App., 407 S.W.2d 559, 566(8); Venie v. South Central Enterprises, Inc., Mo.App., 401 S.W.2d 495, 498), and in reviewing a judgment determined without a jury we subject ourselves to the rule such judgment "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." V.A. M.R. 73.01(d); In re Estate of O'Neal, Mo., 409 S.W.2d 85, 90(1). We conclude the trial judge could properly find the transportation provided plaintiff by the partnership was an implied term of and within the scope of the employment contract. Thus the accident wherein plaintiff was injured arose out of and in the course of his employment and his remedies therefor must be confined to those afforded by the Missouri Workmen's Compensation Law. Accordingly, the judgment of the circuit court is affirmed.

STONE, P. J., concurs.

HOGAN, J., took no part in the consideration or decision of this case.