GROVER DONAHUE, RESPONDENT, v. ADAMS TRANSFER & STORAGE CO., A CORPORATION, DOING BUSINESS AS ADAMS UNION TRUCK TERMINAL AND/OR ADAMS UNION TRUCK CO. AND CONSOLIDATED UNDERWRITERS, APPELLANTS.—88 S. W. (2d) 432.

Kansas City Court of Appeals. November 12, 1935.

216

*Hanna & Hurwitz* for respondent.

*Morrison, Nugent, Wylder & Berger* and *Charles C. Byers* for appellants.

CAMPBELL, C.—The defendants have appealed from a judgment of the Circuit Court of Jackson County affirming an award of the Workmen's Compensation Commission against them and in favor of plaintiff in the amount of $2999.80, of which $300 is for disfigurement. The defendants say that the plaintiff's evidence shows that the latter was an independent contractor, not the employee of the defendant Adams Transfer & Storage Company, hereinafter called company, and that the accident, causing the injury to plaintiff, did not arise out of and in the course of his employment. The commission found both of these questions in favor of plaintiff. That finding, if supported by any substantial evidence, is conclusive on this court. The facts disclosed by the evidence favorable to plaintiff are:

The company was engaged in transporting property from its place of business in Kansas City over public highways to various points in Kansas, Oklahoma, Illinois and elsewhere, using tractors and trailers for that purpose. The plaintiff, in September, 1933, met Mr. Mahan, an employee of the company, whose authority to bind the company is not questioned, and an arrangement was made with Mahan in which plaintiff agreed to buy a tractor and trailer with which he could transport property for the company to points designated by it. Plaintiff was required to pay the wages of his helper, whom the company named, pay for oil and gas and keep his trailer and tractor in repair so that he could respond to the call of the company at any hour, "day or night," including Sundays. During the negotiations between plaintiff and Mahan the former purchased a Studebaker truck which Mahan advised him to purchase. Mahan told plaintiff that he would be required to obtain a trailer built to specifications "as that is what I (plaintiff) had to do to work for them." Mahan furnished the specifications for the trailer and di-

rected plaintiff to have the trailer built by Jack Carter or Keystone Trailer Company. The specifications read:

"Body must be refrigerated. 2 layers asphaltum tar felts—between metal & studing—2 layers inside studding—then one layer $\frac{9}{16}$ in. timlock—then ply wood ceiling & floors same way. Size inside—20 feet long—7 feet 4 wide. 7 foot 2 high. . . . Trailer must have carrying capacity 17000# 326x6-10 ply ties. 33 inch quick detachable rubber mounted 5th wheel—Screw type landing gear, and must include all valve mounting in cab. Must have double lined brakes, 3 inch brakes."

The trailer was built according to the specifications. The plaintiff, prior to doing any work in transporting property for the company, procured from a Mr. Bartlett a policy of liability and cargo insurance covering the tractor and trailer. When plaintiff went to the company's place of business to go to work Mahan asked him if he had insurance. In response to the question plaintiff produced the policy and Mahan said to him, "you can't work with that insurance here, he said, you have to take out fire insurance through Mr. Coleman." Following this conversation plaintiff, at a loss to him of about $18, cancelled the policy which he had obtained and procured liability and cargo insurance through Mr. Coleman. Concerning the insurance, Mahan, for the defendant, testified in effect that he wanted insurance that would protect the company in event of an accident; that the company *reserved* the right to pass upon the insurance and he "didn't want an outfit to go out without insurance. . . ."

Plaintiff made three trips; the first to Chicago; the second to Springfield, and the third to Indianapolis. It was plaintiff's duty to transport a cargo to the company on each return trip, if one could be found, and the company directed him concerning the persons from whom such cargoes might be procured. On the return from Indianapolis plaintiff transported a cargo to the company in Kansas City. He arrived in Kansas City Friday night, November 11, 1933, and finished unloading on the next day. While on the way from Indianapolis the radiator of his tractor began to leak. When plaintiff finished unloading he drove his tractor, as was his custom, to his home, began work upon the radiator, was unable to complete the repairs on ,Saturday and resumed the repair work on Sunday morning. In the work of repairing the radiator on Sunday morning, November 12, he opened a bottle of muriatic acid and some of the acid escaped into his eyes, in consequence of which he lost his "left eye and eyeball."

Are the facts sufficient to sustain the finding of the commission that plaintiff was the servant of the company, not an independent contractor? The evidence favorable to plaintiff and the reasonable deductions to be drawn therefrom show that the company directed

the plaintiff to purchase a certain tractor and to have constructed a certain trailer which he had to have "to work for them;" directed plaintiff to have the equipment painted and to cause its name, terminals and permit number to be "lettered" on the tractor. The equipment was elaborate and expensive. Evidently, the parties intended that plaintiff would do a large amount of hauling. In fact, the commission could very well find from the statements of Mahan to plaintiff that plaintiff's net earnings would be about $175 per month. Thus, it is plain that the parties did not contemplate that plaintiff would make only one trip. Further on this subject, the plaintiff, under the terms of his employment, was required to keep his equipment in repair in order that he could respond to the call of the company at any time of the day or night. The company caused its name and permit number to be placed on the tractor, assigned its permit to plaintiff, gave him travel orders and directed that he transport to it a cargo on each return trip, if one could be found, caused plaintiff to cancel an insurance policy which he had obtained and to buy another policy from an agency designated by the company. There is much significance in the conversation concerning the insurance. Mahan, upon inspecting the first policy, told plaintiff that he could not work "with that insurance here;" that he would have to buy a policy through Coleman. The several statements of Mahan made to the plaintiff prior to the accident indicate that he considered that he was the master and that he was speaking to his servant. The acts and statements of the parties show that the company reserved the right to exercise and did exercise control over plaintiff and the instrumentalities which he used in the performance of his work. The evidence was sufficient to allow the commission to find that the relationship was that of master and servant. [Clayton v. Hydraulic Press Brick Co., 27 S. W. (2d) 52; Chase v. American Press Brick Co., 31 S. W. (2d) 246; Klaber v. Fidelity Bldg. Co., 19 S. W. (2d) 758.]

The defendants in support of their contention that plaintiff was an independent contractor cite many cases, among which are the following: Coul v. George B. Peck Dry Goods Co., 32 S. W. (2d) 758; Carman v. Central Western Dairies, Inc., et al., 58 S. W. (2d) 781; Stein v. Oil & Grease Co., 39 S. W. (2d) 345; Cotton v. Ship-By-Truck Co. et al., 85 S. W. (2d) 80.

In the Coul case, supra, one Hubbs was an extra driver engaged in delivering packages for the defendant in the action. The nature of his employment was such that after he completed a delivery he was allowed to engage in employment not furnished by the defendant. "In the performance of his services Hubbs not only had the right to use his own or such other vehicle as he chose, but to employ another to drive the same." In the instant case there are no such facts. Plaintiff was required under the terms of his employ-

ment to be ready at any hour of the day or night to respond to the call of the company. He was not allowed to transport a cargo in any vehicle save the one which he caused to be constructed according to the specifications furnished by the company and upon which the company caused its name to be placed, nor could he operate that vehicle in transporting a cargo upon a public highway save upon a permit procured by the company. These facts disprove the contention that plaintiff was an independent contractor.

In the Carman case, supra, the court, in speaking of the relationship between the alleged servant and the defendant, said:

"The only requirement of the contract, in each instance, was that the merchandise should be delivered at the point desired, without the exercise of any control over the plaintiff by the dairy company as to the *means* or route adopted or the *time when done.*" (Italics ours.)

In the present case the defendant, as above stated, not only exercised control over the plaintiff in selecting the equipment which he used in the performance of his work but had the right to direct him when such work should be performed.

In the Stein case, supra, the plaintiff claimed that her deceased husband was an employee of the defendant and that his death was caused by a violation of the statute relating to the guarding of machinery. The court held upon the facts shown that the decedent was an independent contractor and not the servant of the defendant. Of the decedent, the court said:

"His work included the wiring of houses, buildings, hotels, and electrical work generally. He usually had a number of jobs on hand and on the day of his injury had other work besides that of respondent. He furnished his own tools and materials and worked at his own pleasure and at his own hours. He had regular printed statement forms, which bore the heading, 'In Account with Oscar F. Stein, Electrical Construction and Repairs (telephone and street numbers). All bills due and payable when the work is completed.' "

Manifestly, there are no such facts in the case at bar. Plaintiff was paid weekly and the amount thereof was based upon "distance and tonnage." Plaintiff had only one employer and to the call of that employer it was his duty to respond immediately at any hour of the day or night, nor did he work "at his own pleasure."

The Cotton case, supra, was an action to recover damages for personal injuries. One of the defenses of the corporate defendant was that its codefendant, its alleged servant, whose negligence caused the injury, was an independent contractor. The court did not determine the question as to whether the alleged employee was the corporate defendant's servant or whether he was an independent contractor. The court said:

"Thus it appears that a relationship of independent contractor

would be no defense. As between the company and the public, Hartz (the alleged employee), was the agent of the company.''

In this connection the defendants, in the case at bar, argue that if a stranger were injured by the negligence of the plaintiff the company would be liable for the resulting damages and therefore the fact that Mahan insisted on plaintiff having liability insurance proved nothing. The fact that the company required liability insurance caused its name to be placed on the equipment and assigned its permit to plaintiff was not, of itself, sufficient to prove agency. But the conduct of Mahan in causing plaintiff to cancel the Bartlett policy and directing plaintiff to buy a policy through an agency designated by him, shows that the company exercised control over plaintiff.

The defendants have also cited many other cases from this jurisdiction. We have read them and find that each case was determined upon its own facts. In none of them were the facts similar to the facts in the present case. Some of the cases from foreign jurisdictions, cited by the defendants, support their contention. Those cases, however, are not in harmony with the cases in this State and we will therefore not follow them.

The contention of the defendants that the accident did not arise out of and in the course of the employment leaves out of view the fact that it was plaintiff's duty under the terms of his contract to repair his equipment when necessary and that he was injured while in the performance of that duty. He was subject to the call of the company at any time and he could not have responded to such call if his equipment were not in repair. This point is ruled against the defendants upon authority of the following cases: Metting v. Lehr Constr. Co., 32 S. W. (2d) 121; Bise v. Tarlton, 35 S. W. (2d) 993; Wahlig v. Grocery Co., 29 S. W. (2d) 128.

The defendants argue that the facts found by the commission do not support the award and that there was not sufficient evidence to warrant the commission in making the award. The commission found from the evidence that the relationship of the employer and employee existed between plaintiff and the company; that plaintiff was subject to the call of the company ''day or night,'' Sunday as well as week days; that it was plaintiff's duty to keep his truck in repair and that such duty arose from his contract of employment; ''that the repairing of this truck was a task incident to his employment;'' that it was the custom of plaintiff to take his truck to his home after unloading freight at the end of each trip; that plaintiff was engaged in the performance of his duty at the time of injury and that he was in a place where his service required him to be; that the accident arose out of and in the course of plaintiff's employment. The finding was sufficient to support the award.

The defendants further contend that the award of $300 for dis-

figurement was not warranted by sufficient evidence, and that the commission acted in excess of its powers in making an award for disfigurement in addition to the award covering partial disability and medical aid. The record discloses that plaintiff was present at the first hearing before a commissioner and that he was also present when the finding of the one commissioner was reviewed by the full commission. Plaintiff had lost his left eye. The commission saw what he cannot see. The commission said that plaintiff was disfigured and we must accept that statement as verity.

We are cited to Sections 3315 and 3311, Revised Statutes of Missouri, 1929, as supporting the claim that the commission acted in excess of its power in rendering an award for disfigurement. Section 3315 reads "For permanent partial disability, in lieu of all other compensation, except that provided under Section 3311 of this chapter, the employer shall pay. . . . If an employee be seriously mutilated or permanently disfigured about the face or head, the commission may allow such additional sum for the compensation on account thereof, as it may deem just, based upon the handicap suffered by the injured employee in obtaining employment, but such sum shall not exceed $1000." This section not only provides compensation for the disabilities scheduled therein but allows the commission to award "such additional sum for the compensation . . ." if the employee be seriously mutilated or permanently disfigured about the face or head. Thus, it is clear that the Legislature intended that in addition to the amount stated in any schedule the commission was *allowed* to award an additional sum in event the injury was such as to bring the employee within the terms of the statute relating to disfigurement. Were we to sustain the contention of the defendants relating to the award for disfigurement we would, in legal effect, abrogate the closing part of said section.

The foregoing disposes of the questions presented on this appeal. The judgment is affirmed. *Reynolds, C.,* concurs.

PER CURIAM:—The foregoing opinion of CAMPBELL, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.