Mayor and Aldermen of Town of Tullahoma *et al. v.* Ward.

(*Nashville,* December Term, 1937.)

Opinion filed April 2, 1938.

LEIGHTON EWELL, of Manchester, and W. H. G. CALD-
WELL, of Nashville, for appellants.

J. D. MURPHREE and L. S. HAUGHLAND, both of Shelby-
ville, for appellee.

MR. JUSTICE CHAMBLISS delivered the opinion of the
Court.

The question presented on this appeal from an award
of compensation is whether or not there is material evi-
dence sustaining the finding of the trial judge (1) that
the death of the employee, husband of petitioner, was

proximately caused, or appreciably accelerated, by the injury he received, and (2) that the injury arose out of and in the course of his employment.

1. W. W. Ward was in the employ of the town of Tullahoma as one of two police officers, he being chief. While walking along a street of the town, just after midnight of July 18, 1936, a car driven by a person who proved to be intoxicated came up behind and swerved from the right to the left side of the road, on which Ward was walking, and struck him, throwing him violently to the ground, bruising his left leg, and his body otherwise. He was in uniform and his pistol was in a scabbard on his left side. A companion, witness Allen, who had formerly served as a police officer, says Ward fell with great force on his left side. He was a large man, weighing about 200 pounds. This witness says that as he rose Ward "placed his hand on his left side and grunted." When asked if he was hurt, he said, "I believe I am hurt pretty bad." He was carried in a passing car to the office of Dr. Mitchell. As he walked in, he was holding his left side and again remarked, "I believe I am pretty badly hurt." Bruises on his ankle and knee and a cut on his hand were treated. No examination of the abdomen was made at that time. Dr. Mitchell is a member of the Board of Mayor and Aldermen. He does not recall the circumstance above mentioned, which is established by others. He was introduced by the defendant and says that he visited Ward once later, in the absence of Ward's physician, Dr. Dossett, and that at that time Ward was suffering, complaining of his left side, and that his bowels would not move. Mrs. Ward says that she received him at home that night and helped him undress; that he complained most of his side; and that there was a blue or

discolored spot on his left side where his gun hung in the scabbard. Ward attempted to get about, using a stick, for several days, but other witnesses say he complained of much pain in this side. Meanwhile, Dr. Dossett was treating him and he finally carried him to the Protestant Hospital in Nashville. There Dr. Thomas Pollard examined and operated on him. He died a few days later, on August 28th, forty days after he was injured. A report from Dr. Pollard was introduced by agreement, reading as follows:

"To whom it may concern:

"This is to certify that Mr. W. W. Ward of Tullahoma, Tenn., deceased, was brought to me by Dr. Dossett of Tullahoma, Tennessee for an examination.

"Mr. Ward gave a history of having met with an automobile accident some days prior to entering the hospital. From the time of the accident, he had pains in his abdomen which continued to grow worse up to the time he entered the hospital.

"Upon examination, I found that he was very tender upon pressure on the whole of his abdomen, more particularly on the left side. He stated that he had been nauseated, and had vomited frequently, and that his bowels had moved with difficulty for the past day or two. Dr. Dossett and I made a tentative diagnosis of intestinal obstruction, probably due to adhesions due to the accident.

"An operation was decided upon. We found that he had a congestion of the left side of the bowel near the sigmoid and rectal junction. At this point was a mass about the size of a small orange, odemetous in nature, that is swollen. The tumor, in my opinion, had been

there for some time, but the acute swelling precipitated his obstruction.

"No effort was made to remove the tumor, the abdomen was closed, and Mr. Ward died a few days later."

It appears from this report Dr. Pollard's tentative examination indicated that an injury had been received on the left side and "intestinal obstruction probably due to adhesions due to the accident." The operation confirmed this, showing the obstruction to be a tumor which was in a swollen condition, and while the tumor had been there some time, the acute swelling precipitated the obstruction. This swollen "intestinal obstruction," which the doctor thought was "due to the accident," fairly appears to have been the immediate cause of death.

Mr. Ward's own explanation of the injury to his side was that "his trouble was caused from the butt of his gun hitting his side." The evidence otherwise seems to support this theory. All the proof shows that Ward was a man of fine physique and in perfect health up to the time of this injury, and that he was never well thereafter.

His personal physician, Dr. Dossett, had had thirty years' experience. When he first visited Ward, a day or two after the accident, he was complaining of pain in the abdomen and left side, was vomiting a good deal, could take no nourishment, and had great difficulty with his eliminations. He said he had seen Ward carrying a gun on this left side in the neighborhood of the position behind which he and Dr. Pollard found the obstruction, which he called a tumor, and which he thought might have been a blood tumor; he did not think it cancerous, and he said an injury to the intestines could have caused such a tumor. "A lick of any kind may cause

serious trouble in the abdomen.'' He said, also, ''If he falls on any part of the abdomen it might cause a blood clot.'' In response to the question whether or not this condition the surgeon found might have been caused by the violence with which Ward was thrown down, Dr. Dossett said, ''as I have heretofore stated, yes. It does not sometimes take a great deal, or a great lick in the abdomen to cause a condition that might be very serious.'' He expressed his opinion in these words: ''This accident I think was very likely the cause of it, [that is, the condition he found] but I could not say that did it—that is my conclusion.'' He observed some discoloration on the side of the abdomen soon after the accident. He testified, also, that he and Dr. Pollard thought this injury more than likely aggravated any prior condition; and that this injury had been traumatic. He said: ''That was our opinion, after discussing the matter. That is, that it must have been some traumatic condition that caused this mass to form, either adhesion or blood clot.''

We quote from the findings of the trial judge as follows:

''As to what this mass was the Doctors do not agree, and as to what caused his death they do not agree, but I find from the proof that the death was caused by this accident, that is to say, the man was well before the accident, from that day on he was never well, he continued to complain and he died as a result of the accident, which was the proximate cause of his death. Whether it was due to what doctors talk about as adhesions due to the accident or whether it was due to a cancerous growth or a blood clot caused by the accident, or if not caused by it it was the occasion of very greatly hastening his death, the Court cannot say. . . .

"In any event the doctors all agree on one thing, that is, if the accident was not the cause of his death, or if he were suffering at that time from a cancer or other malady that the accident materially hastened his death. In either event as a matter of law and facts I find that the accident was the proximate cause of the death. I reach this conclusion irrespective of whether he was suffering at that time from a cancer or other malady and the accident materially hastened his death or whether or not he was perfectly sound at that time. I am inclined to think from the proof that he had no cancer or malady at the time, but in either event I find that the injury was the proximate cause of his death."

We think it unnecessary to review further the evidence under this head. Certainly, there is enough to meet the requirements of the material evidence rule and sustain the finding of the trial judge that the death resulted from this injury, or, at least, was accelerated thereby.

It should be borne in mind that proximate cause, in the true meaning of the phrase, is not always the nearest cause in either time or place. It is essential to liability only that a causal provocative connection shall be shown between the particular injury in question and the ultimate fatal result.

2. Did the injury grow out of Ward's employment, and was it received in the course of his employment?

Responding to this second question, the trial judge found as follows:

"As to the second inquiry, whether or not the accident arose out of and in course of this man's employment, the Court finds that this is not a case where the deceased was going from his work to his home because his field

of operation and his duty required him to be in all parts of this Corporation. One of the places where he was required to be was on the street. It was his duty to see to violations of the law and of the Municipal ordinance. It was his duty to arrest offenders, and as much his duty to do that after 12 o'clock at night as before. There was no ordinance which relieved him from duty after 12 o'clock at night and he and Mr. Cope, the other policeman, had always understood and realized that it was their duty to look to violations of the law on their way to and from the City Hall as any other time. On the night that this accident occurred on the way home he did actually arrest a driver for violation of the law.''

██ Clearly, he was ''in the course of'' his employment at the time and in the place and circumstances of the accident. His place of work was the entire territory within the municipal boundaries. There was no hour or other time limitation on his services. While he selected for rest, or home hours, the time between midnight and noon, this was by no requirement or contract with the city, which had a right to expect and demand his protective service at any hour of the twenty-four. Certainly, whenever awake and on the public streets, whatever his immediate destination, he was subject to calls of official duty whenever the need for official service or action arose. As we have before said, '' 'In the course of employment' refers to the time, place, and circumstances under which the injury occurred.'' *Hendrix* v. *Franklin State Bank*, 154 Tenn., 287, 289, 290, 290 S. W., 30. Whenever Ward was patrolling, that is, walking as guard, any street of Tullahoma, day or night, and whatever his immediate or ultimate destination, he was in the course of his employment.

██ ██ We understand the insistence to be, however, that this injury did not "arise out of" his employment, which "refers to the origin of the cause of the injury." *Id., supra.*

In their comprehensive and carefully prepared brief counsel quote various definitions of the term "arising out of" employment. Among these we find this aptly phrased test for which *Benson* v. *Bush,* 104 Kan., 198, 178 P., 747, 750, 10 A. L. R., 1169, is cited:

"Lord Sumner [*Lancashire & Y. R. Co.* v. *Highley,* 15 N. C. C. A., 210] gave as one test: 'Was it part of the injured person's employment to hazard, to suffer, or to do that which caused his injury? If yea, the accident arose out of his employment. If nay, it did not, because, what it was not part of the employment to hazard, to suffer, or to do, cannot well be the cause of an accident arising out of the employment.' "

Can it be denied that it was a part of Ward's employment "to hazard" that which caused his injury, that is, to incur the hazard of passing to and fro on the streets of Tullahoma, with the risk or danger, always present, of being run down by a drunken driver?

In several reported opinions this court has approved this definition quoted from *Connell* v. *Oscar Daniels Co.,* 203 Mich., 73, 168 N. W., 1009, 1010, 7 A. L. R., 1304:

"An injury arises out of the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury."

We think it should be "apparent to the rational mind, upon consideration of all the circumstances," that there was "a causal connection between the conditions under

which the work" of Ward was "required to be performed and the resulting injury."

The facts of this case differ materially from those in *Hendrix* v. *Franklin State Bank, supra,* where the gun which inflicted the injury was being carried for the personal use and pleasure of the employee; or in *Scott* v. *Shinn,* 171 Tenn., 478, 105 S. W. (2d), 103, 105, where the court said that, "Walking in on a holdup cannot be said to have been a peculiar danger to which his work exposed him."

Normally, and but for his employment, he would have not been so exposed at this time and place, but at his home and in his bed. Nor would it have been necessary for him to carry this weapon, on which he fell so heavily. It appears to be conceded that if Ward had, at the moment of being struck, been signaling the driver of the car to turn, or to stop, or had been attempting in any way to exercise his police power, then the accident would have arisen out of his employment. This is true, but the rule may not be so restricted. If, while walking around, patrolling the streets, a policeman slips on a banana peel, or falls into an open manhole, he is covered, as much as if he had been at the moment in pursuit of some offender.

Moreover, we think the fair inference is that Ward's injury to his left side, which appears to have done serious internal damage, was the direct result of his having his pistol in its scabbard in the position shown; that the violent fall of this heavy man on this object attached to his side was the cause of the serious injury. It thus appears that his carrying of this weapon, which his duty required, was the direct cause of his injury; that the instrumentality which proximately produced the injury was one which he was required to use in performing his

duty. If this gun had been exploded by his fall and wounded him fatally, could it be contended that his injury did not arise out of his employment?

Cases from this and other jurisdictions are relied on for the rule that an employee is not covered when going to and from his work, or when departing therefrom on a personal mission. These holdings do not apply. It is true that Ward appears to have been on his way home, but he was on the premises of his employer, and still under all the obligations of his employment, in his uniform and carrying his badge and weapons of office. Following his injury and despite of it, he later that night found and arrested the drunken driver who had run him down. We find no error in the judgment, and it is affirmed.