**Mary E. HAMMACK, Dependent Widow of Archie U. Hammack, Deceased, Respondent,**

v.

**Dale NICHOLSON d/b/a Ozark Truckers Association et al., Appellants.**

**No. KCD 27968–27978.**

Missouri Court of Appeals, Kansas City District.

Aug. 2, 1976.

Roland A. Wegmann, Hillsboro, Tweedie Fisher, Jefferson City, for appellants.

Claude T. Wood, Richland, for respondent.

Before TURNAGE, P. J., and WELBORN and HIGGINS, Special Judges.

ROBERT R. WELBORN, Special Judge.

Appeal from judgment of circuit court affirming award by Industrial Commission of death benefits under Workmen's Compensation Act to widow of deceased employee.

In November, 1968, Missouri Petroleum Products Company contracted with the State Highway Commission of Missouri to widen and resurface Route 63 from the intersection of Route 28 in Maries County to Rolla. Dale Nicholson, an individual doing business as Ozark Truckers Association, submitted to Missouri Petroleum a proposal to haul asphalt and rock for the project for sixty cents a ton. Missouri Petroleum accepted the offer. Nicholson put some trucks owned by him on the job. He also arranged for truckers owning their own vehicles to work on the job for compensation agreed to between Nicholson and the truck owner. One trucker entering into such arrangement was Archie U. Hammack, who lived at Iberia, Missouri.

For the project, Missouri Petroleum set up a plant where the asphalt mixture used

in resurfacing the highway was prepared by mixing and heating the ingredients. The product was then transported by truck to the site of the work on the highway where it was dumped into a "lay-down" machine and applied to the roadway.

On July 16, 1969, Hammack, along with other truckers employed by Nicholson for the job, had loaded his truck at the mixing plant and had taken the heated mix to the site of the work on the highway about a mile away. The lay-down machine had broken down and, after a period of waiting, Petroleum's job superintendent told the drivers that the project would have to be shut down for the day and that they should dispose of the hot asphalt in their trucks as they wished. Once the mixture had been prepared it was of no further use to Petroleum unless it could be applied to the road while still hot. If allowed to remain in the truck overnight, the mixture would set like concrete and could be removed only with considerable difficulty.

Several truckers sold the loads on their trucks to a motel in the vicinity for $50 a load which the drivers were permitted to keep.

Hammack and his son, Roger, who was also driving a truck on the job, started to drive their loaded trucks to Iberia, some thirty miles from the job site. The Hammacks did not ordinarily go to and from their home to the work site daily in their trucks. They usually left the trucks at the job site and drove back and forth from and to the residence in a pickup truck.

At between 12:00 noon and 1:00 p.m., while Archie was driving west on Route 42, some three miles from Iberia, a front wheel came off his truck and the truck ran off the road and struck a tree. Archie received injuries from which he died at the scene.

There was no evidence of what Archie proposed to do with his load of asphalt. The load on his son's truck was dumped on the drive of a service station in Iberia.

Mary E. Hammack, Archie's widow, filed a claim for benefits under the Workmen's Compensation Law against both Nicholson and Petroleum. A referee of the Division of Workmen's Compensation found in favor of the claimant and awarded total benefits of $18,300. The referee concluded that the disposal of the unused asphalt mix was the responsibility of the contractor. "It was to be (sic) the best interest of the Missouri Petroleum Company and the employee to get the load of asphalt disposed of." The referee found against both Nicholson and Missouri Petroleum, concluding that the latter was liable as a statutory employer because Nicholson failed to carry workmen's compensation insurance and had not qualified as a self insurer.

On appeal to the Industrial Commission, the award of the referee was affirmed. The commission did reject the finding that Missouri Petroleum was a statutory employer. The commission found that Nicholson and Petroleum were joint employers. The commission further found:

"The referee correctly found that it had been the policy of Missouri Petroleum to allow drivers of loaded trucks to dispose of their loads of hot asphalt as they saw fit when it unexpectedly became impossible to dump it into the 'lay-down' machine located on the construction site. The sole purpose of this procedure was to prevent the hot load of asphalt from cooling to the extent that it would 'set-up' while still in the bed of the truck where it would be all but impossible to remove. Of course, if and when this occurred, the trucks involved would be unavailable for use when needed. It is obvious, therefore, that this customary policy or procedure involved a practice which would most always result in a service and benefit to Missouri Petroleum, to Ozark Truckers and sometimes to the truck driver if he was so fortunate as to be able to use or dispose of the material at some profit to himself.

"In the instant case we find that the service to both Missouri Petroleum and Ozark Truckers was an errand for the purpose of removing the unused asphalt from the truck so that it would be available for use upon the repair of the 'lay-down' ma-

chine. Missouri Petroleum was required as a requisite part of its regular business activity to use the employee's truck and others to transport asphalt to the construction site. Ozarks (sic) was required as a requisite part of its regular business activity to furnish the employee's truck to Missouri Petroleum for this purpose. The dumping of the hot asphalt before it cooled and 'set-up' in the truck bed clearly created the necessity of the trip even though claimant at the same time was evidently serving some purpose of his own. It is sufficient that the business motive was a concurrent cause of the trip. We find, therefore, that the motor vehicle trip in which the employee was engaged at the time of the fatal accident in question was not undertaken for a strictly personal reason but was combined with a necessary service errand for both Missouri Petroleum and Ozark Truckers which both Missouri Petroleum and Ozark Truckers had a right to control or direct."

The circuit court affirmed the award of the commission. Separate appeals by Nicholson and by Missouri Petroleum and its insurer followed. The appeals have now been consolidated.

The Industrial Commission based its finding that the death of Hammack arose out of and in the course of his employment upon the "dual purpose" doctrine. The commission recognized that the trip was in some respects personal and unrelated to the employment, but it found further that the employer created the situation which necessitated the trip and that they would be benefited by having the load emptied and the truck available for work the next day.

On its limited review of the commission's findings and award (§ 287.490, RSMo 1969), this court cannot say that the facts found by the commission do not support the award nor that there was not sufficient competent evidence to warrant the making of the award. Appellants' contentions to the contrary are premised primarily upon their conclusion that the evidence showed that Missouri Petroleum provided a place at the mixing plant in which the unused material

might have been dumped and that the employer-employee relationship terminated when the employee elected not to take advantage of that means of disposing of the load and instead chose to return to his home and dispose of it there. There was evidence to the effect that dumping facilities were available, although that evidence was not wholly uncontroverted. The reviewing court is, of course, not a fact finding agency so that it would not be the proper function of this court to resolve this factual issue. Nor have appellants asserted that the commission erred in failing to resolve the issue. Rather they argue on the apparent basis that the conclusion which they assert is the only conclusion which might be reached on this issue. That this is not an uncontroverted issue is demonstrated by respondent's statement in her brief: "While there was conflicting testimony as to whether the employer provided a dump site, the preponderance of evidence indicated that there was no site readily available that had been used in the past for the dumping of material under these circumstances."

However, even if the contention of the appellants be accepted, the mere existence of such a dump site would not render the commission's findings unsupported by evidence or contrary to the overwhelming weight of the evidence. There was no evidence that drivers were required to make use of the claimed dumping site. In fact, the former superintendent for Petroleum who was in charge of the job stated that in a situation such as here presented: "We would just tell them to do what they wanted to with it, they could take it back and dump it or sell it or take it home. *We let them do whatever they wanted to.*" (Emphasis supplied) The employer thus clearly chose not to exercise its right to control what the driver should do with the unusable load and left the driver to make his own choice of what to do. Having acquiesced in the procedure, the employer cannot now say that the employment related obligations ceased when the employee elected a course which also provided some personal benefit to himself.

Appellants do not challenge the commission's finding that the disposal of the load did inure to the benefit of the employer. Given such a finding, this court cannot say that such benefit was "so tenuous as to be imperceptible * * *." *Elliott v. Darby*, 382 S.W.2d 70, 76 (Mo.App.1964). In the application of the dual purpose doctrine the interest of the employer need not be the dominant cause of the trip. The doctrine "simply requires that the service of the employer be a concurrent cause of the journey." *Gordon v. Puritan Chemical Company*, 406 S.W.2d 822, 828 (Mo.App.1966). Here the commission found that the interest of the employer was such a concurrent cause. Appellants have not demonstrated that such conclusion was erroneous.

The appellants Missouri Petroleum and its insurer contend on this appeal that the commission erred in holding Missouri Petroleum liable as a statutory employer. In their brief they state: "As Petroleum understands the award, the Commission concluded that Petroleum was a statutory employer as defined in Section 287.040, Paragraph 1, RSMo 1959." This statement is wholly contrary to the express statement of the commission in its finding: "The finding and conclusion by the referee that employee was a statutory employee of Missouri Petroleum is hereby stricken and not herein adopted." Obviously the appellants' contentions on this point are directed to a finding not made by the commission and therefore it presents nothing for review.

Judgment affirmed.

All concur.