Patricia R. BEGEY et al.,
Plaintiffs-Respondents,

v.

PARKHILL TRUCKING COMPANY,
Employer-Appellant,

and

Carriers Insurance Company,
Insurer-Appellant.

No. 9826.

Missouri Court of Appeals,
Springfield District.

Jan. 17, 1977.

Motions for Rehearing or Transfer to Supreme Court Denied Feb. 4, 1977.

Application to Transfer Denied
March 14, 1977.

L. R. Buehner, Buehner & Buehner, Joplin, for employer and insurer-appellants.

Herbert Douglas, Douglas, Douglas & Douglas, Neosho, for plaintiffs-respondents.

Before STONE, P. J., and HOGAN and TITUS, JJ.

HOGAN, Judge.

Asserting that her husband, Frank Begey, died as the result of injuries arising out of and in the course of his employment, Patricia Begey sought death and dependency benefits for herself and two minor children under the Workmen's Compensation Act. The referee denied compensation. On appeal, the Industrial Commission reversed the referee and entered an award of compensation under § 287.240, RSMo Supp.1973. The Circuit Court of Jasper County affirmed the award. The employer and insurer have appealed.

Frank Begey was an over-the-road truck driver. The employer and insurer have admitted that Begey was Parkhill's employee at the time of his death on August 9, 1972. Having "dropped" a loaded trailer at Tinker

Air Force Base, Begey arrived at Parkhill's branch terminal near Oklahoma City about 6:45 p. m. August 8. He was then "out of hours" and was required by federal regulation to take an 8-hour break, but he indicated that he wanted to go to Joplin as soon as possible to be present for his step-daughter's wedding. O. J. Austin, another truck driver, testified that Begey attempted to obtain fuel at the terminal early in the evening on August 8, but because it was raining the pump was "shorted out" and inoperative. Begey was advised that the nearest fuel stop was located at Interstate 35 and 44th Street in Oklahoma City.

Begey took his break; he was in fact ineligible to drive until it was completed. There was evidence, largely diversionary, that he drank some intoxicants during his rest period, but he later drank some coffee, slept an hour or more in his tractor, and was able to drive by the end of his break. There were no loaded trailers available at the Oklahoma City terminal, and Begey at first proposed to "bobtail"[1] straight to Joplin. Later it was discovered that a loaded trailer was available at Savanna, Oklahoma. Begey was dispatched to "bobtail" and "deadhead"[2] to Savanna, pick up the loaded trailer and proceed to Joplin. The evidence is in conflict as to the time Begey left the terminal; he had been dispatched to leave at 5:00 a. m., but was free to leave earlier and apparently did so. About 3:30 a. m. on August 9, Begey lost control of his tractor near the intersection of Robinson and 29th Streets in Oklahoma City, ran into a building and was killed. This proceeding followed.

▆▆▆ In this court the appellants have expended considerable effort developing basic principles which govern claims under the Workmen's Compensation Act. For example, they cite precedents which illustrate that the claimants had the burden to establish that Begey's injuries arose both "out of" and "in the course of" his employment. Such is indeed the requirement of the statute. § 287.120(1), RSMo 1969, V.A.M.S.;

*Fowler v. Baalmann*, 361 Mo. 204, 212, 234 S.W.2d 11, 16 (banc 1950); *Cowick v. Gibbs Beauty Supplies*, 430 S.W.2d 626, 630 (Mo. App.1968). We likewise agree that an injury arises "out of" the employment if it is a natural and reasonable incident thereof and is the rational consequence of some hazard connected with the employment, and arises "in the course of" the employment when it occurs within the period of employment, at a place where the employee may reasonably be and while he is reasonably fulfilling the duties of his employment. *Conley v. Meyers*, 304 S.W.2d 9, 12 (Mo.1957); *Griffin v. Doss*, 411 S.W.2d 649, 652 (Mo.App.1967).

We may dispense with the argument that Begey's injuries and death did not arise "out of" his employment. Begey was employed as a truck driver; he met his death as the result of a street accident, and in our opinion it cannot be argued his death was not the result of a hazard connected with his employment. Neither do we find any contention raised, either before the Commission or here, that the injury did not occur during the period of Begey's employment; in fact, as we understand the employer and insurer's stipulation or admission before the referee, Begey was "in the employ" of Parkhill at the time he died. The focus of the appellants' argument is that there is no competent and substantial evidence on the whole record which establishes that Begey was killed at a place where he might reasonably be, while he was reasonably fulfilling the duties of his employment or doing something incidental thereto.

▆▆▆ Appellants argue first that "for some several hours before his fatal accident [Begey] was off duty and not in an employment status." We cannot agree. There was some evidence, as noted, that Begey consumed some intoxicants during his break, but we conclude, as did the referee and the Commission, that the evidence of Begey's drinking at the beginning of his break is not germane in view of the further evidence that he was sober, well-oriented and able to drive before he left the Oklaho-

---

1. Drive the tractor without a trailer.

2. To move without a load of any kind.

ma City terminal. See *Phillips v. Air Reduction Sales Co.*, 337 Mo. 587, 595, 85 S.W.2d 551, 555 (1935); *O'Neil v. Fred Evens Motor Sales Co.*, 160 S.W.2d 775, 779 (Mo.App.1942). Begey's rest period was part of his employment. *Patton v. Patton*, 308 S.W.2d 739, 743 (Mo.1958). In the circumstances, Begey was, as appellants put it, "in an employment status" during his rest period at the terminal.

■■■ Appellants further argue that because Begey was "going away from his area of employment" and was actually going away from the place where he could obtain fuel, and because there was no competent and substantial evidence that he needed fuel, the Commission could not have found that Begey was at a place where he might reasonably be, reasonably fulfilling the duties of his employment or doing something incidental thereto. In advancing this argument, the appellants urge us to adopt the finding of the referee, but in this connection we bear in mind that the findings of the referee are in no way binding upon the Commission; the Commission reviews the record, determines the credibility of the witnesses and the weight to be given their testimony, resolves any conflicts in the evidence and reaches its own conclusions independently of the referee's findings. *McAdams v. Seven-Up Bottling Works*, 429 S.W.2d 284, 287 (Mo.App.1968). It is the award of the Commission, not the finding of the referee, which we review, *Michler v. Krey Packing Co.*, 363 Mo. 707, 716, 253 S.W.2d 136, 140 (banc 1952); *McAdams v. Seven-Up Bottling Works*, supra, 429 S.W.2d at 287, and we are required to construe the whole record in the light most favorable to the findings and award of the Commission; when the evidence and inferences are conflicting, resolution rests with the Commission and that resolution is conclusive on the reviewing court. *Bradshaw v. Richardson Trucks, Inc.*, 467 S.W.2d 945, 947 (Mo. banc 1971); *Brown v. Missouri Lumber Transports, Inc.*, 456 S.W.2d 306, 307–308 (Mo.1970).

■■ If it can be reasonably inferred here that Begey's purpose in leaving the termi-

nal was to prepare his tractor for further over-the-road use, he was engaged in activity incident to his employment. See *Hammack v. Nicholson*, 539 S.W.2d 788 (Mo.App. 1976) (driver disposed of an unusable load of hot mix so truck would be available later); *Donahue v. Adams Transfer & Storage Co.*, 230 Mo.App. 215, 220, 88 S.W.2d 432, 435 (1935) (driver repaired truck so it would be available on call). The record discloses that Begey did not merely *inquire* about fuel on the night of August 8; Austin testified that he saw Begey *attempt to obtain fuel* at the terminal, but "[t]he fuel pump there was shorted out and fuel was not available." Austin directed Begey to a fueling station near the intersection of I–35 and 44th Street. There was evidence from the terminal manager that the terminal "had problems with [its] pump." "When it rained, it seeped *into* the cables; [they] could not pump fuel because it would blow all of [their] fuses when it was raining." We know from the record that Begey could expect fuel mileage varying from 4½ to 7½ miles per gallon, that he was dispatched to travel at least 130 miles to Savanna, and it may be inferred that he had been on the road at least 12 hours before he reached the terminal at Oklahoma City. We conclude, as did the Commission, that it may be reasonably inferred that Begey needed fuel and intended to locate a source of fuel before leaving Oklahoma City.

The appellants argue at length that Begey could not have been going after fuel because the site of the accident was "completely off of any route that [Begey] might have been on, if he was going to Savannah [sic] or Joplin". They point out that the accident occurred one to three miles west of 29th Street's intersection with I–35, where Begey should have turned onto I–35 to reach the source of fuel nearest the terminal. In this connection, several circumstances must be borne in mind. Begey's employment with Parkhill was fairly recent at the time he was killed; he had been employed about two months. It is reasonable to suppose that he was not entirely familiar with all the places along the routes

ordinarily followed by Parkhill drivers. Further, to turn south on I–35, or Gary Expressway, from southeast 29th Street, a driver going west (as Begey would have been going) must travel over the interstate and then turn sharply left to enter the southbound lane or lanes of the expressway. The record indicates there is only "one sign" indicating the exit from southeast 29th onto southbound I–35; there is also evidence that it was raining when Begey left the terminal. In addition, the road maps introduced by the parties demonstrate quite clearly that the "downtown area" of Oklahoma City, where Begey's death occurred, is a literal maze of interstate cloverleaves and overpasses in which any driver might become temporarily disoriented if he were driving in the rain at 3:30 a. m. The fact that Begey's accident occurred some distance from the intersection where he should have turned south permits, but certainly does not require, the inference that he had deviated from his normal route.

 Finally we must bear in mind the following facts and circumstances: Begey had been dispatched to Savanna and was free to leave earlier than 5:00 a. m., the departure time called for. Parkhill paid nothing for "bobtail" miles; if Begey picked up no loaded trailer at Savanna, he was obliged to absorb the cost of traveling "bobtail" or "bobtail and deadhead" from the total received for the use of his equipment. Begey had a financial interest in picking up a loaded trailer at Savanna. It is of no consequence that the whole trip may incidentally have served some purpose of his own, if Begey's trip also served his employer's purpose, and it was not necessary that the interest of the employer be the dominant cause of the trip. *Hammack v. Nicholson,* supra, 539 S.W.2d at 791. We conclude, as did the Commission, that conflicting inferences can be drawn from the evidence; we are therefore concluded by their resolution of the inferences, *Bradshaw v. Richardson Trucks, Inc.,* supra, 467 S.W.2d at 947, and accordingly the award of compensation is affirmed.

All concur.