KANSAS CITY, MISSOURI POLICE DEPARTMENT, Employer,

and

Argonaut Insurance Company, Respondents,

v.

Vickie S. BRADSHAW, Phillip A. Bradshaw, and Kimberly K. Bradshaw, Appellants.

No. WD 31168.

Missouri Court of Appeals, Western District.

Sept. 2, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 1, 1980.

Application to Transfer Denied Nov. 12, 1980.

Clyde G. Meise, W. Edward Coen, Jr., Meise, Cope & Coen, Kansas City, for Vickie and Phillip Bradshaw.

Roger J. Staab, Kansas City, for Kimberly Bradshaw.

Bart E. Eisfelder, Kansas City, for respondents.

Before TURNAGE, P. J., and SHANGLER and MANFORD, JJ.

TURNAGE, Presiding Judge.

The death of Phillip Bradshaw, a Kansas City police officer, resulted in this Workmen's Compensation claim filed by his widow, Vickie, and his two minor children. The administrative law judge awarded compensation and that award was affirmed by divided vote of the Labor and Industrial Relations Commission. On appeal to the circuit court the award was reversed and Vickie and the two minor children have appealed from that judgment.

On this appeal it is contended that the accident in which Bradshaw was killed arose out of and was in the course of his employment as a police officer of Kansas City. Affirmed.

The facts are not in dispute. Officer Bradshaw had been a member of the Kansas City Police Department for about six years. He worked his regular tour of duty from 7:00 A.M. to 3:00 P.M. on August 30, 1974, and was next scheduled for a regular tour of duty with the Kansas City Police Department on September 3, 1974. In addition to his duties with the Kansas City Police Department, Officer Bradshaw had a part-time job with the Plaza Security Association which provided security for the Plaza, a shopping district in Kansas City. On August 31, 1974, at about 2:30 P.M., Officer Bradshaw was riding his own motorcycle to the Plaza to begin work for the Plaza at 3:00 P.M. He wore his regular Kansas City Police Department uniform complete with gun and all of the regular attachments. While en route to the Plaza, his motorcycle

collided with an automobile and as result of the injuries sustained in that accident, Officer Bradshaw died on September 19, 1974.

A number of general orders issued by the Chief of Police of the Kansas City Police Department were placed in evidence. All police officers of Kansas City, including of course Officer Bradshaw, were subject to being called back to duty in the event of an emergency at any time. Vickie testified that during the three years she had been married to Officer Bradshaw, he had never been recalled to duty.

A civilian employee of the Police Department who was also the supervisor of personnel records testified that it was the custom of the Kansas City Police Department that the uniform not be worn when the officer was off-duty. He stated as his opinion that Officer Bradshaw was authorized to wear the police uniform while he was working for the Plaza Association. However, General Order 71–36 provided that police officers could be employed within the city limits of Kansas City by private police companies and that the officers must wear the uniform of the companies by whom they were employed and could not wear the police department uniform. They were allowed to wear the department issued badge on the private company uniform and were required to wear an approved firearm with such uniform. The order provided any exceptions must be approved by the bureau commander.[1]

General orders also required police officers to obtain permission before they could accept off-duty employment. Officer Bradshaw submitted an application for off · duty employment with the Plaza Association on May 25, 1974, in which he stated he was to work four hours a day on two days a week. The application contained the question, "Does this position require you to be in uniform or civilian clothing?" and the answer given was "uniform." The application was approved by Bradshaw's division commander on the date it was filed.

John Warren testified that he was the Director of Security and he employed Officer Bradshaw to work from 3:00 P.M. to 9:00 P.M. three to four days a week. Warren stated he wanted off-duty police officers because the presence of officers in the uniform of the Kansas City Police Department was a deterrent to crime and because, in his opinion, they could make arrests on the public streets in the Plaza area.

Warren stated that he assigned the days and hours the officers were to work for him doing foot patrol in the Plaza area. The Plaza was divided into two districts but the two off-duty officers who worked each shift would decide between themselves which area they would patrol. The officers, while working for the Plaza, carried walkie-talkies by which they communicated with the Plaza Association office. They did not maintain direct communication with the Kansas City Police Department. Warren further stated if an officer reported for duty for him but had paperwork or other details connected with his Police Department duties to wind up, the officer would not come on duty with the Plaza until he had completed all of his Police Department duties.

A general order of the Police Department provided that the department would not pay any officer for any time spent in court or any overtime spent for any court appearance resulting from arrests made during off-duty employment. Although the Police Department maintained an off-duty employment pool with a coordinator to assist officers to obtain off-duty employment, Warren stated he did not go through the pool to employ Bradshaw because he depended upon personal recommendations from officers currently or previously employed by him.

Another general order defined "tour of duty" for a police officer as extending from the time he is required to report for work

---

1. The arguments ignore this conflict in the evidence and the effect of the plain requirement of the general order. However, for the purposes of this opinion it will be assumed without de-

ciding that Bradshaw had consent to wear his uniform while working for the Plaza Association.

until the time the tour is over. After those hours the officer is considered to be off-duty.

Another general order contained restrictions on the carrying of packages and other activities by police officers in uniform. There was no evidence as to whether Officer Bradshaw habitually wore his uniform home from work, but it is apparent he kept a uniform at home from the fact that he left his home on an off-duty day for his part-time employment wearing his regular police uniform. Vickie testified that on occasion Officer Bradshaw would wear his uniform to the store and on other occasions when he was neither on-duty nor working for the Plaza.

The administrative law judge found that Bradshaw at the time of the accident was dressed in full uniform while riding his own motorcycle on the streets within Jackson County where he was commissioned as a police officer. He found that he was en route to his second job as a security officer for the Plaza Association, which is located in Jackson County. He found that the accident occurred within Jackson County. He also found that although off-duty officers are encouraged to carry their side arms at all times, they are not required to do so. The officers are trained as to the procedures to follow in the event they observe a crime being committed or a citizen in need during their off-duty time. The finding was also made that although the officer is not compelled to intervene in a situation when he is off-duty, his off-duty conduct is subject to control nonetheless.

The law judge further found that the Police Department controlled the type of off-duty part-time employment which officers could obtain and the hours during which they could work part-time jobs. He further found the department controlled the circumstances under which the off-duty officer could wear his uniform while in the employ of an off-duty employer.

The law judge found the Police Department could better utilize its on-duty force by knowing when and where its officers were engaged in off-duty employment and

in this way the Police Department could take advantage of employers paying the salaries of officers who were off-duty to perform the same functions as on-duty officers. The law judge concluded that from these findings Officer Bradshaw sustained his accident while within the scope of his employment with the Police Department. For his conclusion that the accident arose out of and in the course of the employment, the law judge relied on *King v. City of Clinton*, 343 S.W.2d 185 (Mo.App.1961) and found that since Officer Bradshaw was dressed in his police uniform at the time of the accident he was thereby performing a duty reasonably incidental to his duties as a police officer.

Section 287.120, RSMo 1969, provides that every employer subject to the provisions of the Workmen's Compensation Law "shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of his employment, . . . ." Section 287.020[6], RSMo 1969, provides:

Without otherwise affecting either the meaning or interpretation of the abridged clause, "personal injuries arising out of and in the course of such employment," it is hereby declared not to cover workmen except while engaged in, or about the premises where their duties are being performed, or where their services require their presence as part of such service.

In *Begey v. Park Hill Trucking Co.*, 546 S.W.2d 529, 531[1, 2] (Mo.App.1977) the court stated:

We likewise agree that an injury arises "out of" the employment if it is a natural and reasonable incident thereof and is the rational consequence of some hazard connected with the employment, and arises "in the course of" the employment when it occurs within the period of employment, at a place where the employee may reasonably be and while he is reasonably fulfilling the duties of his employment.

On this appeal Vickie and the minor children urge the circuit court erred in revers-

ing the award because the accident did arise out of and in the course of Bradshaw's employment with the Police Department because there was a direct causal connection between the injury and the employment. They also contend the injury was a rational consequence of a hazard connected with the employment and occurred within the period of employment at a place where Bradshaw was expected to be while performing the duties of his employment.

■ "Where, as in this case, the facts are not controverted, whether the employee's death arose out of and in the course of his employment becomes a question of law. As such, the Industrial Commission's determination is not binding on the reviewing court." *Hunt v. Allis–Chalmers Manufacturing Company*, 445 S.W.2d 400–401 (Mo. App.1969). In this case the parties do not disagree as to any facts. Thus, the question as to whether or not Bradshaw's injuries arose out of and in the course of his employment as a Kansas City police officer becomes one of law.

Vickie and the children's contention that they are entitled to Workmen's Compensation benefits can be summarized as follows: Officer Bradshaw was subject to call twenty–four hours a day; the Police Department and the public were benefited by the public presence of a uniformed officer because this had a deterring effect on crime; Bradshaw was at a place where he was expected to perform his duties because he had the right to arrest for a crime committed in his presence; and he was on his employer's premises and subject to a multitude of controls because he was within the City of Kansas City and in uniform. To support these contentions reliance is placed upon *King, supra*, and a number of other out–of–state cases. In *King* this court held the injury arose out of and in the course of the employment of King as a police officer by the City of Clinton when the accident occurred while King was walking on his back porch in his uniform wearing his gun in a holster. King somehow tripped and in losing his balance the gun discharged and injured him. This court held the injury was

compensable because the City required police officers to report for duty in uniform but did not provide a place at the police station for them to change from their civilian clothing to the uniform. King had put on his uniform together with the gun and was walking across his back porch on the way to work when the accident occurred. This court held that since the City required him to have the uniform on at the time the accident occurred and that he was in a place where he might reasonably have been, he was actively performing the needs of his employer. The hazard which caused the injury was the gun which King was required to carry in the holster as a part of his uniform. This court found a direct causal connection between the hazard which caused the injury and the employment. This court specifically declined to decide the question of whether or not the fact King was subject to duty twenty–four hours a day was sufficient to entitle him to compensation.

In *King* this court cited *Mayor and Aldermen of Town of Tullahoma v. Ward*, 173 Tenn. 91, 114 S.W.2d 804 (1938) and Vickie strongly relies upon that case. In *Ward* the officer was walking home after his tour of duty wearing his pistol. He was struck by a car and fell on his side forcing the gun into his abdomen. The court pointed out there were no definite hours fixed for Ward to perform his duties although he elected to rest at home between midnight and noon. The court found he was actively performing his duty by being on the street and the injury arose out of his employment.

Vickie also relies on *Garzoli v. Workmen's Compensation Appeals Board*, 2 Cal.3d 502, 86 Cal.Rptr. 1, 467 P.2d 833 (banc 1970). Garzoli was a police officer on his way home after his tour of duty on his own motorcycle wearing his uniform. The City did not provide an adequate place for officers to change clothing at the end of their tour so the chief of police had given his consent that an officer could wear his uniform and carry his pistol while en route to and from his home. The court specifically rejected the argument that because the of-

ficer was on twenty–four hour call that he was covered for Workmen's Compensation benefits. The court found Garzoli came within an exception to the going and coming rule which ordinarily excludes Workmen's Compensation coverage because he was required to wear his uniform to and from work and while wearing his uniform and while thus traveling, he was expected to render assistance to members of the public in the field of law enforcement if it were needed.

Vickie also relies on several other out–of–state cases in which it was held that police officers on their way to or from their tour of duty were held to be covered by Workmen's Compensation.

It is apparent that *King* does not control this case. King was required to put on his uniform and gun at home. The hazard which caused the injury was the gun which King was *required* to wear at the time of the injury. This was a hazard connected with the employment and was a reasonable and natural incident thereof. No such employment–connected hazard caused an injury to Bradshaw. In all of the other cases relied on by Vickie and the children, the officer was either going to work or returning therefrom at the time of the accident. In this case, Bradshaw was not going to or returning from his tour of duty with the Kansas City Police Department. Rather, he had been off–duty since the day before the accident occurred and at the time of the accident was on his way to his part–time job at the Plaza.

It is further contended that since Officer Bradshaw was subject to call twenty–four hours a day that he was always on–duty. This concept was rejected in *Fingers v. Mount Tabor United Church of Christ*, 439 S.W.2d 241 (Mo.App.1969). In *Fingers* the employee was subject to call at any time and was required to live in a house furnished by the church. While Fingers was going to the basement on a personal mission concerning a refrigerator, he fell and was injured. The court found such injury was not compensable by Workmen's Compensation because it did not arise out of his employment. The court stated it was erroneous to consider only the fact that the employee was required to live in the employer's house in determining whether an injury arose out of and in the course of employment. The court held that to award Workmen's Compensation benefits on the facts shown would be tantamount to making the employer an insurer of the employee. The court stated that Workmen's Compensation "was never designed to operate as accident insurance with blanket coverage as to any and all accidents wherever and whenever received by an employee." The court held that while Fingers was subject to call, he was in fact off–duty when he was injured.

■ The fact that Officer Bradshaw was subject to call twenty–four hours a day in emergency situations, does not place him "on–duty" with the Kansas City Police Department twenty four hours a day for purposes of the Workmen's Compensation Law. *Garzoli, supra.*

Likewise, the evidence shows that the accident did not occur at a place where the employee might reasonably have been and while he was reasonably fulfilling the duties of his employment. Without question Officer Bradshaw was off–duty and had been since the day before. He was not scheduled to go back on–duty until two days later. The Kansas City Police Department made no requirement upon Officer Bradshaw to ride his own motorcycle to his job at the Plaza. His employment at the Plaza during his off–duty time was Bradshaw's own choice and certainly for his own benefit. He was paid directly by the Plaza for his duties there. As pointed out above, although the argument is made that Officer Bradshaw may have been authorized to perform some law enforcement functions while off–duty, the fact remains that at the time of this accident he was not performing any law enforcement functions but was going on a mission wholly personal to himself.

■ From the facts in this case, this court is led to conclude that the accident and resultant injury and death did not arise out of and in the course of employment of

Bradshaw by the Kansas City Police Department. At the time of the accident Bradshaw was off–duty and was neither traveling to or from a tour of duty. Bradshaw was not doing anything at the time of the accident which was a natural and reasonable incident of his employment, but was engaged in a wholly personal endeavor. The cause of his death was not a hazard connected with his employment with the Police Department.

■ The only remaining question is whether the fact that Officer Bradshaw was wearing his uniform at the time of his death is sufficient to authorize the conclusion the injury arose out of and in the course of his employment. At the time of the accident, the uniform was worn with bare consent to facilitate his part–time employment which inured to his own benefit.[2] All of the cases relied upon involved the wearing of the uniform during the immediate trip of going to and returning from duty and most are based on the duty of the officer to perform his law enforcement duty while in uniform. The evidence here does not reveal any obligation on the part of Bradshaw while off–duty to perform any police function even if in uniform, but despite this, it is contended that Bradshaw was authorized (not required) to protect life and property and to render law enforcement assistance. Whatever Bradshaw may have been authorized to do, the fact is at the time of the accident he was not involved in any law enforcement duty, but was simply riding his own motorcycle while on the way to his second job.

In *State Compensation Ins. Fund v. Workmen's Comp. App. Bd.*, 29 Cal.App.3d 902, 106 Cal.Rptr. 39 (1973) the court denied Workmen's Compensation to a police officer who was driving to work in his own automobile while wearing his uniform. The court distinguished *Garzoli* on the ground that he was not required to wear his uniform on the way to work and the injury did not arise from his performance of any law enforcement activities.

Further, the wearing of the uniform did not make the injury a rational consequence of some hazard connected with his employment. The fact that he was wearing his uniform and carrying a gun did not constitute any hazard which resulted in the accident. The accident could just as well have happened while Officer Bradshaw was wearing civilian clothes as it would while wearing his uniform. Nor is there any evidence that the carrying of the gun in any way contributed to the accident or his injury.

Vickie further argues that the wearing of the uniform constituted a benefit to the Police Department because the presence of a uniformed officer is a deterrent to crime and a person observing an officer in uniform cannot detect whether the officer is on or off duty. Even assuming a benefit to the Police Department, this one factor is not sufficient to meet the requirements of Workmen's Compensation. To focus on this factor to the exclusion of the facts necessary to provide coverage would be to ignore the plain dictates of the law.

■ In *Griffin v. Doss*, 411 S.W.2d 649, 653 (Mo.App.1967) the court stated:

When, as here, the activity is not expressly provided in the employment agreement, a determination is then made whether the injury arose from something that had by custom, practice or otherwise become an incident of the employment.

Here it cannot be said that the accident arose from something that had by custom or practice or otherwise become an incident of the employment. While the Police De-

2. Some argument is made that the Police Department benefited from the off–duty employment because Bradshaw was performing his usual police duties while being paid by the Plaza Association and the Department could schedule on–duty officers to take advantage of the coverage offered by Bradshaw. There was no evidence that the Department knew when Bradshaw was working or that manpower was deployed in reliance on the off–duty private employment by Bradshaw. In fact, Bradshaw was working more than his application indicated he would. Furthermore, Bradshaw was only on his way to work at the Plaza. Ordinarily accidents incurred in traveling to and from work are not covered by Workmen's Compensation. *Person v. Scullin Steel Co.*, 523 S.W.2d 801, 806[4] (Mo. banc 1975).

partment had given its permission for Bradshaw to hold the second job at the Plaza, his trips between home and the Plaza for the purpose of performing his job with the Plaza had not become an incident of his employment with the Police Department.

In summary, Officer Bradshaw was not on–duty with the Police Department at the time of the accident and thus he was not injured while engaged in or about the premises where his duties were performed or where his services required him to be. The accident was not the rational consequence of some hazard connected with his employment, nor did it occur where he could reasonably be expected to be because he was off–duty and was not fulfilling the duties of his employment. The fact he was on call at all times does not extend coverage under *Fingers* and *Garzoli*, and the wearing of the uniform alone does not suffice to meet the requirements of Workmen's Compensation coverage under the facts here.

The trial court was correct in entering judgment reversing the award made by the Labor and Industrial Relations Commission. The judgment is affirmed.

All concur.